1997 OK 86

**Patrick Ryan REDDELL, Appellant,**

v.

**Derek JOHNSON, Appellee.**

**No. 87276.**

Supreme Court of Oklahoma.

July 1, 1997.

William W. Busby, Garrison, Brown, Carlson, Buchanan & Busby, Bartlesville, for Appellant.

Richard G. Harris, Harris, Whitebread & Cone, Bartlesville, for Appellee.

SUMMERS, Vice Chief Justice.

¶1 Does a voluntary combatant in a "BB gun war" have an action against the player who shot him in the eye, given that the "rules" of the game prohibited aiming above the waist? We say no, and affirm the trial court's dismissal.

¶2 Patrick Reddell and Derek Johnson, both eighteen years old, agreed to participate in a BB gun war. The rules were that no shots should be aimed above the waist, that guns be pumped no more than three times to limit the force of the BBs, and shots be taken only when the person aimed at was in the open. In the course of the game Johnson shot Reddell in the eye, causing damage which resulted in seriously reduced vision.

¶3 Reddell brought a negligence action, alleging that Johnson negligently fired the BB gun pointed above the waist. In a later amended petition Plaintiff alleged that this amounted to recklessness and gross negligence. Johnson answered, denying primary negligence and asserting as affirmative defenses assumption of the risk and contributory negligence.[1] Defendant filed a motion for summary judgment, and Plaintiff responded by filing his own motion for summary judgment. Included with the motions were copies of depositions of both parties. The trial court granted summary judgment to Defendant, concluding that the defense of assumption of risk barred liability.

¶4 The Court of Appeals affirmed, but on a completely different theory. It reasoned that this case was not one involving negligence, but rather for the intentional tort of assault and battery. Because the statute of limitations for assault and battery is only one year, the court *sua sponte* held that plaintiff's action was not timely filed, and that summary judgment for the defendant was warranted. We have granted certiorari, vacate the opinion of the Court of Appeals, and affirm the judgment of the trial court.

¶5 Plaintiff urges that the Court of Appeals erred by raising as an issue an affirmative defense not pleaded by the parties. The

Court of Appeals justified its action on the general appellate principle that a trial court will be affirmed, even though its result was reached through erroneous reasoning, if there is any proper basis upon which it may be so affirmed. *Benham v. Keller*, 673 P.2d 152, 154 (Okla.1983).

¶6 An appellate court is generally confined to the issues raised by the parties and presented by the proof, pleadings, petition in error and briefs. *Mothershed v. Mothershed*, 701 P.2d 405, 411 (Okla.1985); *Northrip v. Montgomery Ward & Co.*, 529 P.2d 489 (Okla.1974); *Steiger v. City Nat'l Bank of Tulsa*, 424 P.2d 69, 72 (Okla.1967) (matters not first presented to the trial court for resolution will not be considered by the Supreme Court); *Edwards v. Pierce*, 376 P.2d 269, 272–73 (Okla.1962); *Diem v. Diem*, 372 P.2d 19, 23 (Okla.1962) (if a judgment may be upheld on any theory presented by the proof or pleadings, it may stand). It is the duty of the parties to frame the issues.

¶7 In *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991), the Supreme Court explained that when a particular claim or defense is before the Court, the Court is not limited to a particular theory. However, courts are not free to play the role of advocate, and raise claims or defenses that should be left to the parties to raise. *Doubleday & Co., Inc. v. Curtis*, 763 F.2d 495, 502 (2nd Cir.1985), *cert. denied*, 474 U.S. 912, 106 S.Ct. 282, 88 L.Ed.2d 247 (1985) (court cannot raise the defense of waiver when it was not raised by the party who could have done so.) Only under limited conditions, such as in a public-law controversy, may an appellate court raise a new issue *sua sponte*. *First Federal Savings & Ln. v. Nath*, 839 P.2d 1336, 1343 n. 35 (Okla.1992).

¶8 This rule goes hand in hand with the principle that affirmative defenses must be raised by the parties or are waived. *Furr v. Thomas*, 817 P.2d 1268, 1272–73 (Okla.1991); *Harper–Turner Oil Co. v.*

---

1. He alleged several other affirmative defenses which need not be discussed in light of our holding, one of which was "volenti no fit injuria". For the purposes of this opinion, we do not address this defense separately from that of assumption of the risk. For a discussion of the "volenti" doctrine see *Thomas v. Holliday*, 764 P.2d 165, 169, note 12 (Okla.1988).

*Bridge,* 311 P.2d 947, 949 (Okla.1957). The statute of limitations is an affirmative defense which must be pleaded. *Red Eagle v. Free,* 191 Okla. 385, 130 P.2d 308, 311 (1942); 12 O.S.1991 § 2008(C)(18).

¶ 9 In the present case Reddell's petition alleges negligence and gross negligence. Nowhere in the pleadings, motions or attachments to the motions is there any indication that the parties sought to litigate the intentional tort of assault and battery. The answer, while pleading several affirmative defenses, does not raise the statute of limitations.

¶ 10 If the plaintiff had pled a cause of action for assault and battery, and the defendant had raised the affirmative defense of the statute of limitations, among others, but the trial court decided the case on, say, the defense of assumption of risk, then the Court of Appeals would have been free to affirm the trial court by using the properly raised defense of limitations. However, that was not the posture of this case. It is not the place of an appellate court in a case such as this to in effect plead and prove for a party an affirmative defense that the party, intentionally or otherwise, did not plead nor prove. *Curtis, supra; Furr, supra.*

¶ 11 We now turn to the question of whether the trial court correctly granted summary judgment to the defendant. Plaintiff asserts that under our Oklahoma Constitution, contributory negligence and assumption of risk are always questions for the jury. Defendant claims that under limited circumstances, such as those here, summary judgment may properly be granted under the doctrine of assumption of risk.

¶ 12 The Oklahoma Constitution provides in Article 23, Section 6, that "[t]he defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be questions of fact, and shall, at all times, be left to the jury." Following the plain meaning of these words, this Court has generally required the issue of assumption of risk to be submitted to a jury. *See, e.g., Byford v. Town of Asher,* 874 P.2d 45 (Okla.

1994); *Flanders v. Crane Co.,* 693 P.2d 602 (Okla.1985); *Foster v. Harding,* 426 P.2d 355 (Okla.1967); *Joy v. Pope,* 175 Okla. 540, 53 P.2d 683 (1936).

¶ 13 Two exceptions to Article 23, Section 6's mandate have been recognized. In *Flanders v. Crane,* 693 P.2d at 606, we held that the defense of assumption of the risk need not be presented to the jury if (1) the plaintiff fails to present evidence showing primary negligence on the part of the defendant, or (2) if there are no material facts in dispute, and reasonable minds exercising fair and impartial judgment could not reach differing conclusions. These two exceptions were again recognized in *Anderson v. Northwestern Elec. Co-op.,* 760 P.2d 188 (Okla.1988) and *Byford v. Town of Asher,* 874 P.2d 45 (Okla.1994). In *Byford* we cautioned "[t]he exceptions to Article 23, Section 6's constitutional assurance of a jury's determination of the defense of assumption of the risk must be narrowly read, lest they swallow the rule." *Id.* at 50.

¶ 14 Considering first the "lack of primary negligence" exception, we noted in *Byford* that this is really not an exception, but is the fundamental premise underlying all negligence suits; without primary negligence the defendant is not liable. *Id.* at 48. *Thomas v. Holliday,* 764 P.2d 165 (Okla. 1988) spoke to this exception, explaining that under certain circumstances the defendant owes no duty to the plaintiff.[2] No duty is owed in situations in which "plaintiff has made no express agreement to release the defendant from future liability but is presumed to have consented to such a release because he has voluntarily participated in a particular activity or situation which involves inherent risks." *Id.* at 168 n. 8. The touchstone of the defense of assumption of the risk is consent. *Id.* at 169.

¶ 15 This "presumed consent" involves situations such as the voluntary participation in a sport or game. *Id., citing Ogden v. Rabinowitz,* 86 R.I. 294, 134 A.2d 416 (1957) (voluntary participant assumes risks ordinarily associated with the game or sport).

---

**2.** The elements of negligence are duty owed by the defendant, breach of that duty, and resulting injury to the plaintiff. *Kraszewski v. Baptist Med. Center,* 916 P.2d 241 (Okla.1996).

"... [T]he defendant would not be negligent because he owes no duty to the plaintiff. A classic example of this type of risk assumption is afforded by a fan injured while attending a sports event. The fan is deemed to have consented that the game may be played without taking any precautions to protect him from stray balls, and the law takes notice of the existence of a special 'relational' duty between the fan and the owner." *Thomas v. Holliday,* 764 P.2d at 168–69.

¶ 16 The risk of being struck by a batted or thrown ball is one of the "natural risks" assumed by spectators attending a baseball game. *Lang v. Amateur Softball Assn. of America,* 520 P.2d 659 (Okla.1974) Other such cases reported include *Pfister v. Shusta,* 167 Ill.2d 417, 212 Ill.Dec. 668, 657 N.E.2d 1013 (1995) (student injured in informal game of "can kicking" was barred from recovering from another participant under the "contact sports" exception to negligence); *Knight v. Jewett,* 3 Cal.4th 296, 11 Cal. Rptr.2d 2, 834 P.2d 696 (1992) (player in a touch football game assumed the risks associated with playing the game with exuberant participants); *Maddox v. City of New York,* 66 N.Y.2d 270, 496 N.Y.S.2d 726, 487 N.E.2d 553 (1985) (baseball player injured while playing on muddy field assumed risk by continuing to play after he knew of the field's condition); *Kuehner v. Green,* 406 So.2d 1160 (Fla.D.Ct.1981) (party injured while sparring in a karate session assumed the risks of a "leg sweep"); *Provence v. Doolin,* 91 Ill. App.3d 271, 46 Ill.Dec. 733, 414 N.E.2d 786 (1980) (pit crew member was injured during a race when he was struck by a race car); *Kennedy v. Providence Hockey Club, Inc.,* 119 R.I. 70, 376 A.2d 329 (1977) (spectator at a hockey game assumed the risk of a flying hockey puck); *Tavernier v. Maes,* 242 Cal. App.2d 532, 51 Cal.Rptr. 575 (1966) (softball player injured when a runner slid and knocked him down).

¶ 17 We believe that the present case falls within this so-called exception. The Washington appellate court held similarly in *Foster v. Carter,* 49 Wash.App. 340, 742 P.2d 1257 (1987). There, a group of boys agreed to have a BB gun war. They agreed to aim only below the waist to avoid injury to their eyes. Plaintiff, predictably, was shot in the eye with a BB. At the time he was hit only the upper portion of his body was visible, as he was peeking around a tree. The court held that as a matter of law the plaintiff assumed the risks inherent in playing in a BB gun war, and that the defendant was entitled to judgment.

¶ 18 Similarly, in *McLane v. Stillmaker,* 103 Ohio App. 255, 143 N.E.2d 610 (1957), adults were shooting at flies on a brick wall with a BB gun. A BB ricocheted off the wall and hit the plaintiff in the eye. The court held "[i]t seems to us that this is a classic case for the application of the principle of assumption of risk...." *Id.,* 143 N.E.2d at 613. The court continued by stating that one cannot deliberately incur an obvious risk of personal injury and then hold another responsible for the ensuing injury. *Id.* The court held that the trial court should have granted the defendant's motion for judgment notwithstanding the verdict.

¶ 19 Reddell and Johnson were going to spend the night together. The game was to be the next day. On the night before the game Reddell's mother expressed concern. In her deposition she said:

"And I told them not to, and I said 'Somebody will get their eye put out!' [Here there was some discussion about goggles.] And then they left, and the last thing I said before they closed the door 'Please, don't do it.' "

The dangers of this game were and are readily apparent. *See Bookout v. Victor Comptometer Corp.,* 40 Colo.App. 417, 576 P.2d 197 (1978) (dangers of a BB gun are readily apparent and need not be described by the manufacturer). That the participants knew of the danger is evident by their "below the waist" rule, yet they declined to wear protective eyewear. Johnson stated that he did not aim at Reddell's head, but only in his general direction. Both were familiar with BB guns, and their participation was voluntary. Each assumed the risks inherent in the game, one of which came to pass.

¶ 20 This case does not stray from our position that the exceptions to Article 23,

Section 6 must be construed narrowly. However, under *Thomas v. Holliday* and the other authority cited, this case falls within the "exception" number one, in reality a failure to show primary negligence. Defendant owed no duty to plaintiff, as both voluntarily entered into the game and knew of the inherent risks. As the court stated in *Knight v. Jewett,* 11 Cal.Rptr.2d at 16, 834 P.2d at 718, the case involving injury in the touch football game,

> The courts have concluded that vigorous participation in such sporting events likely would be chilled if legal liability were to be imposed on a participant on the basis of his or her ordinary careless conduct. The cases have recognized that, in such a sport *even when a participant's conduct violates a rule of the game and may subject the violator to internal sanctions prescribed by the sport itself, imposition of legal liability for such conduct might well alter fundamentally the nature of the sport by deterring participants from vigorously engaging in activity that falls close to, but on the permissible side of, a prescribed rule.* (emphasis added)

¶ 21 Plaintiff's voluntary participation in the BB gun fight puts him in the same status as the infielder injured by the sliding baserunner and the pit crew member struck by the race car. He is deemed to have consented to the risks inherent in the sport. The other player is thus under no legal duty to him, and the legal concept of liability for negligence is missing one of its necessary ingredients.[3]

■ ¶ 22 Plaintiff's amended petition alleged gross negligence and recklessness. Some states have held that gross negligence or reckless conduct totally outside the range of normal activity in the sport cannot be absolved through the defense of assumption of the risk. *Knight v. Jewett,* 11 Cal.Rptr.2d at 16, 834 P.2d at 718. We find no support for these allegations or that theory in the record presented on summary judgment. Such bare assertions without support in the evidentiary material do not prevent summary judgment here.

3.   See Note 2, *supra.*

¶ 23 The opinion of the Court of Civil Appeals is vacated. The judgment of the District Court of Osage County is affirmed.

¶ 24 HODGES, LAVENDER, SIMMS, HARGRAVE, ALMA WILSON and WATT, JJ., concur.

¶ 25 KAUGER, C.J., concurs in result.

¶ 26 OPALA, J., concurs in judgment.

