1998 OK CIV APP 151

**Terry TAYLOR, Plaintiff/Appellant,**

**v.**

**Kevin HESSER and Craig Huxman, d/b/a Dodge City Paint Ball, and Michael Martin, Defendants/Appellees.**

**No. 91,140.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 15, 1998.

David W. Edmonds, Ellen A. Tallant, Edmonds, Cole, Hargrave, Givens & Witzke, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Michael L. Darrah, Hilary S. Allen, Durbin, Larimore & Bialick, Oklahoma City, Oklahoma, for Defendants/Appellees Kevin Hesser and Craig Huxman.

S. Marc Walls, Angela D. Ailles & Associates, Oklahoma City, Oklahoma, for Defendant/Appellee Michael Martin.

## OPINION

Opinion by KENNETH L. BUETTNER, Presiding Judge:

¶ 1 Plaintiff/Appellant Terry Taylor (Taylor) suffered an eye injury when he was shot in the eye after removing his safety goggles during a paintball game at Dodge City Paint Ball. Taylor sued Defendants/Appellees Kevin Hesser and Craig Huxman, d/b/a Dodge City Paint Ball (Hesser, Huxman, or Dodge City), and Michael Martin (Martin) alleging negligence, assault and battery, and strict liability for an unlawful act. Hesser, Huxman and Martin filed motions for summary judgment. The trial court granted summary judgment on the negligence claim October 10, 1997. Summary judgment on the remaining issues was granted March 20, 1998. Because we find there is no substantial controversy of material fact, and that Hesser, Huxman and Martin are entitled to judgment as a matter of law, we affirm.

¶ 2 Summary judgment is proper where there is no substantial controversy of material fact and one party is entitled to judgment

as a matter of law. *Seitsinger v. Dockum Pontiac Inc.,* 1995 OK 29, 894 P.2d 1077.

¶ 3 The facts of the instant case are not in dispute. Taylor and his friend Larry Wisley went to Dodge City August 10, 1996 to play paintball. Paintball games involve players on opposing teams shooting each other with paint pellets. The game is played on an open field with a creek bed, trees and brush. Players try to capture a flag without being shot.

¶ 4 After arriving at Dodge City, Taylor participated in an orientation meeting in which the rules of the game were explained. At the orientation meeting, the players, including Taylor, were informed that the rules required them to leave their safety goggles on at all times while on the field of play. In the orientation, it was explained that if a player's safety goggles became fogged he must call for a referee to either help him off the field or shield the player's face while he cleaned his goggles.

¶ 5 Taylor also signed a release which included clause (2): "(the undersigned) is aware of the possibility of risk of injury, including but not limited to being shot by a paintball, ... improper use of equipment by the undersigned or any other player and others not following the safety rules. Although remote, the possibility of permanent disability or death does exist;" and clause (9): "understands that serious and permanent eye injury, including loss of eyesight, can occur if approved paintball safety eye wear is not worn in any area where paintball guns may be intentionally or accidentally discharged. I understand that it is my responsibility to wear approved safety eye wear and I accept that responsibility." The release also included the statement: "The undersigned desires and agrees to assume any and all risks."

¶ 6 Taylor's exhibit 7, "Dodge City Paint Ball Safety Instructions/Game Rules," begins with "Goggles." The instructions explain that if goggles become fogged or covered with paint, the player must call for a "paintcheck" and wait for a referee. In his deposition, Taylor testified that he remembered the rule about not removing his gog-

gles. Taylor testified that he was not thinking of that rule when he raised his goggles.

¶ 7 Taylor played two games of paintball without incident. In the third game, Taylor's safety goggles became fogged. Taylor testified that he called "timeout" three or four times. Taylor testified that he "assume(d) you were supposed to wait for the referee." Taylor laid down while he called timeout. Taylor testified that no one gave him permission to raise his goggles, but that he raised them because: "I had been there long enough. I mean, I waited for a while. No one showed up." Taylor raised his goggles and wiped them out. As he was lowering them, he was shot in the eye. Taylor testified that he could have walked off the field in the direction he came from, without cleaning his goggles, but that he would probably have gotten shot if he did that and would then be out of the game.

¶ 8 Martin testified that in the game in which Taylor was shot, Martin was looking for people on the opposing team to shoot when he spotted the top of a pair of goggles. Martin raised up, saw the top of the goggles, shot three times and dropped back down. Martin testified that he then heard someone moaning and called a referee over. Martin estimated he was 25–30 feet from Taylor when he shot him. Martin's shot hit Taylor in the eye and Taylor lost most of his vision in that eye.

¶ 9 Taylor's first issue on appeal is whether the court erred in granting summary judgment on Taylor's negligence claim. The court granted summary judgment on the negligence claim based on Hesser, Huxman, and Martin's affirmative defense of assumption of the risk. The Oklahoma Constitution provides that "(t)he defense of contributory negligence or assumption of risk shall, in all cases whatsoever, be questions of fact, and shall, at all times, be left to the jury." Okl. Const. Art. 23, § 6. Our Supreme Court, however, has recognized two exceptions to this rule. Trial courts may avoid presenting assumption of risk to a jury if (1) plaintiff fails to present evidence of primary negligence by defendant, or (2) no material facts are in dispute and reasonable minds exercising fair and impartial judgment could not

reach differing conclusions. *Reddell v. John-son,* ¶ 13, 1997 OK 86, 942 P.2d 200, citing *Flanders v. Crane,* 1985 OK 88, 693 P.2d 602, 606.

¶ 10 One of the essential elements of any negligence claim is a duty owed by the defendant to the plaintiff. *Kraszewski v. Baptist Medical Center,* 1996 OK 141, 916 P.2d 241. In *Reddell,* the court explained that

> No duty is owed in situations in which 'plaintiff has made no express agreement to release the defendant from future liability but is presumed to have consented to such a release because he has voluntarily participated in a particular activity or situation which involves inherent risks.' ...
> The touchstone of the defense of assumption of the risk is consent. *quoting Thomas v. Holliday,* 1988 OK 116, 764 P.2d 165.

One of the situations in which consent is presumed is voluntary participation in a game. *Reddell,* ¶ 15. *Reddell* involved two eighteen year olds who agreed to participate in a BB gun war. One of the rules was that there would be no shots above the waist. Nevertheless, during the game, Reddell was shot in the eye. The court held that the participants in the BB gun war owed no duty to each other because they had consented to play in the game and assumed its inherent risks.

¶ 11 Likewise, in the instant case, Taylor and the other participants in the paintball game consented to the risks associated with the game. We therefore conclude that the parties did not owe a duty of care to Taylor to avoid hitting him with paintballs. Absent a duty there can be no negligence. Because Taylor has failed to show primary negligence, the court was under no constitutional obligation to present the defense of assumption of risk to a jury.

■ ¶ 12 Taylor also argues that Martin was negligent for failing to follow clause (5)

of the release which provided that "(the undersigned) agrees to use any paintball equipment in a manner which will not cause injury or damage to himself/herself or others playing." We note, however, that in *Reddell* the defendant did not follow the rule established that there would be no shots above the waist. The court ruled that the dangers of the BB gun war were evident and that the "no shots above the waist" rule indicated that the players were aware of the danger. The court reiterated that persons who willingly participate in a game or sport consent to the risks involved, which may include actions which violate the rules of the game. Additionally, Martin testified that he saw a pair of goggles and shot. Taylor has not presented evidence that Martin was aware the goggles were raised off of Taylor's eyes or that Martin used the paintball equipment in a manner which would cause injury. The injury resulted from Taylor's own failure to wear protective eyewear.

¶ 13 *Reddell* controls the outcome of this case. Summary judgment on Taylor's negligence claim was proper because Hesser, Huxman, and Martin did not owe Taylor a duty to protect him from injury under the undisputed facts in the record.

■ ¶ 14 Taylor next asserts that, in shooting Taylor with a paintball gun, Martin violated 21 O.S.1991 § 1364 [1] and Hesser and Huxman aided and abetted a criminal act. In its order granting summary judgment, the trial court held that Taylor is estopped from bringing a strict liability claim under § 1364 because Taylor was voluntarily engaged in the same activity. The court declined to decide whether the paintball game was in fact illegal under § 1364. We affirm summary judgment on this issue without deciding whether the paintball game violates § 1364.

---

1. **§ 1364. Discharging firearm**
   Every person who willfully discharges any pistol, rifle, shotgun, airgun or other weapon, or throws any other missile in any public place, or in any place where there is any person to be endangered thereby, although no injury to any person shall ensue, is guilty of a misdemeanor. Any person convicted of a violation of the provisions of this section after having been issued a

concealed handgun license pursuant to the provisions of the *Oklahoma Self–Defense Act, Sections 1 through 25 of this act,* [FN1] shall have the license suspended for a period of six (6) months and shall be subject to an administrative fine of Fifty Dollars ($50.00), upon a hearing and determination by the Oklahoma State Bureau of Investigation that the person is in violation of the provisions of this section.

¶ 15 Assuming, *arguendo,* that shooting a paint ball gun at another person violates § 1364, Taylor was *in pari delicto* with Martin, Hesser, and Huxman. Therefore, Taylor is estopped from taking advantage of his own possibly illegal act to recover damages. See *Henrie v. Griffith,* 1964 OK 215, 395 P.2d 809; *Oden v. Pepsi Cola Bottling Co. of Decatur,* 621 So.2d 953, 955 (Ala.1993). For the same reason, we decline to hold that Hesser and Huxman are liable for aiding and abetting Martin in a criminal act (violating 21 O.S.1991 § 1364).

¶ 16 We also reject Taylor's argument that estoppel does not apply because he was no longer a participant in the game because he called timeout. Under the undisputed facts, goggles were not to be removed until a player had been escorted off the playing field, or a referee came to shield the player from being shot. Neither of these events took place. Taylor was still a participant in the activity for estoppel purposes.

¶ 17 In granting summary judgment, the court also found that Martin was entitled to judgment on Taylor's assault and battery claim because Taylor had consented to any touching. We agree. As stated above, it is undisputed that Taylor gave his consent, both in his signed release and in his voluntary participation in the game, to be shot with a paintball gun. Lack of consent is an element of a cause of action for assault and battery. Accordingly, summary judgment was proper on this claim.

¶ 18 Taylor's final assertion of error on appeal is that the trial court erred in finding that paintball is not an ultrahazardous activity. A party conducting an ultrahazardous activity is liable for damages regardless of fault. *Wetsel on Behalf of Wetsel v. Indep. School Dist. I–1,* 1983 OK 85, 670 P.2d 986. The Restatement of Torts explains this principle:

§ 519. General Principle

(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

That operation of a paintball facility is not an abnormally dangerous activity is evident upon review of the factors used to determine whether an activity is abnormally dangerous:

§ 520. Abnormally Dangerous Activities

In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

The undisputed facts demonstrate that Taylor was harmed by a paintball pellet only because he elected to remove his goggles, despite being instructed not to remove the goggles. The undisputed evidence does not show a high degree of risk of harm. In addition, it is undisputed the risk is eliminated by the exercise of reasonable care in wearing protective goggles. Hesser and Huxman operated the paintball game in a rural field, beyond the city limits, which is appropriate to the activity. We do not find the court erred in determining that paintball is not an ultrahazardous activity as a matter of law.

¶ 19 The record presented establishes that there is no dispute as to any material fact, and demonstrates that Hesser, Huxman and Martin are entitled to judgment as a matter

of law. We therefore AFFIRM summary judgment.

ADAMS, J., concurs by stare decisis.

HANSEN, J., concurs in part and dissents in part:

I concur as to the individual and dissent with respect to the operators.