OSCN Found Document:HOWARD and HOWARD v. THE BARRINGTON HOMEOWNERS, et al.

 

 
 HOWARD and HOWARD v. THE BARRINGTON HOMEOWNERS, et al.2026 OK 9Case Number: 121469Decided: 02/18/2026THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2026 OK 9, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

PATTY HOWARD and ALEXIS HOWARD, Plaintiffs/Appellants/Petitioners,
v.
THE BARRINGTON HOMEOWNERS ASSOCIATION, INC., an Oklahoma Non Profit Corporation; STANLEY KARBER, an individual; ALDO RODRIGUEZ, an individual; DAVID SILVER, an individual; and KARLA MORAN, an individual, Defendants/Appellees/Respondents.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION IV

¶0 Plaintiffs filed suit in Oklahoma County District Court alleging that the Board improperly used homeowners' association dues, improperly sold a storage unit, failed to hold proper meetings, and was permitting unlawful activities on premises. Defendants filed motions for summary judgment which the district court granted. Plaintiffs appealed and the Court of Civil Appeals affirmed the district court.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS' OPINION
VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.

Travis Mendoza, Travis Mendoza Law, PLLC, Oklahoma City, Oklahoma, for Plaintiffs/Appellants/Petitioners, Patty Howard and Alexis Howard.

Ann Richard-Farinha, Hartsfield & Egbert, PLLC, Edmond, Oklahoma, for Defendants/Appellees/Respondents, The Barrington Homeowners Association, Inc., Stanley Karber, David Silver, and Karla Moran.

Richard C. Labarthe, Labarthe Law Offices, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee/Respondent, Aldo Rodriguez.

OPINION

DARBY, J.,

¶1 This appeal arises out of a dispute between members of a homeowners' association and the board thereof. The question before this Court is whether the district court erred in granting summary judgment in favor of the board. We answer in the negative.

I. STANDARD OF REVIEW

¶2 We review a district court's grant of summary judgment under a de novo standard. Video Gaming Techs. v. Rogers Cty. Brd. of Tax Roll Corrs. (VGT I), 2019 OK 83Toch, LLC v. City of Tulsa, 2020 OK 81474 P.3d 859de novo review. Frat. Ord. of Police v. City of Norman, 2021 OK 20489 P.3d 20see also Frat. Ord. of Police, 2021 OK 20Toch, 2020 OK 81

II. UNDISPUTED MATERIAL FACTS & PROCEDURAL HISTORY

¶3 On October 17, 2020, an attorney for one of the plaintiffs contacted Mr. Karber, Defendant and then-President of the Board of Directors of the Barrington Homeowners Association, via letter regarding the Barrington HOA. This letter enumerated concerns about the sale of common elements of the Barrington, namely a storage unit, and requested production of documents no later than November 20, 2020, in order to avoid legal action by the client. On March 1, 2021, Patricia Howard submitted a consumer complaint to the Attorney General regarding the same sale of the HOA common element and improper HOA elections. The Attorney General's office forwarded the consumer complaint to the HOA on March 3, 2021.

¶4 On April 2, 2021, Plaintiffs' counsel again sent a letter to Mr. Karber, as President of 11401 Barrington Corporation and President of the Board of the Barrington HOA. This letter requested documentation, including minutes and agendas, discussing the sale of the common elements as well as documents regarding a variety of checks and invoices from the past few years. The letter concluded: "If the documents are not timely produced, we will take all appropriate steps to enforce my clients' rights to view and copy them. They are prepared to pursue criminal charges and a civil suit to obtain the documents and to further investigate board actions."

¶5 On April 6, 2021, counsel for the Barrington HOA responded to the Attorney General's office stating the sale in question had been rescinded and that the Board was attempting to follow proper channels to re-do it correctly. HOA Counsel also noted that the board had struggled to set regular meetings due to the pandemic but had a meeting scheduled shortly thereafter.

¶6 On November 23, 2021, Plaintiffs' counsel emailed Barrington counsel in part: "I have attached a draft Petition that we intend to file early next week. For the derivative claims, we hereby demand that the Barrington bring suit against Stanley Karber, David Silver, and Aldo Rodriguez for the claims set forth in the Petition." Def'ts' Mot. for Part. Summ. J., Mar. 13, 2023. On November 30, 2021, three business days later, 

¶7 On March 13, 2023, all of the defendants, except Mr. Rodriguez, filed a motion for partial summary judgment claiming that Plaintiffs failed to make a proper pre-suit demand for Barrington HOA to file a lawsuit in order for Plaintiffs to file a derivative suit. The defendants also asserted that the Board's decision to not file suit was protected by the business judgment rule. Mr. Rodriguez joined the motion for partial summary judgment on March 22, 2023. Plaintiffs argued in response that their email contained a pre-suit demand and that Oklahoma case law does not prescribe a specific time frame for a pre-suit demand. Plaintiffs also asserted that in order to invoke the business judgment rule the Board needed to show that the Board actually investigated Plaintiffs' demand and made a good-faith decision not to pursue the claims.

¶8 On April 20, 2023, the district court held a hearing on the motion for partial summary judgment on the derivative claim. At the hearing, the Plaintiffs argued that there is no requirement for a pre-suit demand under Oklahoma statute. Amended Supp. to ROA, Tr. of Apr. 20, 2023, 11:16--23; 19:21--20:16. Plaintiffs further argued that Defendants must show they acted in good faith to exercise the business judgment rule, but that the Defendants' prior creation of a separate entity, 11401 Barrington Corporation, was a breach of their good faith and loyalty toward the HOA shareholders. Id., at 12:14--13:8. And finally, Plaintiffs argued that there was a genuine dispute of material facts in the case regarding when Plaintiffs possibly made an initial pre-suit demand. Id., at 13:9--145:13. The court took the motion under advisement.

¶9 On April 24, 2023, Defendant Barrington HOA filed a motion for summary judgment. This was followed by motions for summary judgment by all of the other defendants. On June 2, 2023, the trial court held a hearing on the motions for summary judgment and to settle the journal entry regarding the April 20 hearing. At that hearing, Defendants argued that Plaintiffs had failed to demonstrate that there was any disputed material issue. Defendants asserted that Plaintiffs' evidence simply consisted of affidavits asserting, "upon information and belief the board has failed to comply with the Barrington governing documents" and "upon information and belief I have reason to believe the current board is not a duly-elected board" with no support behind the allegations. Tr. of June 2, 2023, 23:2--24:18. The district court stated at the end of the hearing, "I have to make my decision based on what's in the record. And it's hard for me not to sustain this motion based off of the upon-information-and-belief language in that affidavit. I'm going to sustain the motion for summary judgment." Id., at 7--12.

¶10 On June 2, the district court granted the motion for partial summary judgment heard April 20, on the derivative claim issue. The order stated that seven days, including Thanksgiving, "is not a reasonable time for Defendants to answer the pre-suit demand nor to conduct an investigation in good faith to make a determination as to whether initiating litigation is in the corporation's best interest." The order also stated that Plaintiffs had failed to meet their initial burden to prove that the board violated its fiduciary duties in reaching the challenged decisions. On June 20, 2023, the district court granted the motions for summary judgment.

¶11 On March 8, 2024, COCA affirmed the district court. COCA found that Plaintiffs had numerous communications with the HOA, but that only Plaintiffs November 23 email included a demand for the Barrington HOA to file a lawsuit. COCA Op. 7, Mar. 8, 2024. COCA also found there was no pre-suit demand made as to Ms. Moran. COCA acknowledged that Oklahoma statutory and case law is silent regarding timing of a pre-suit demand. COCA Op. 7. But COCA found that "a corporation should be given a reasonable timeframe upon a demand to permit it to investigate in good faith and determine whether litigation is in the corporation's best interest, and to respond to the demand. What is reasonable will necessarily depend on the facts of the case." COCA Op. 7. COCA found that the time from Plaintiffs' November 23 email to filing the November 30 petition was unreasonable and thus the district court properly found that Plaintiffs failed to make an adequate pre-suit demand. Further, COCA found that Plaintiffs' affidavits were insufficient to raise a dispute of fact regarding the business judgment rule, that Plaintiffs failed to show an individual loss in order to maintain a direct action, and the district court did not abuse its discretion in denying Plaintiffs' request for a continuance. This Court granted Plaintiffs' petition for certiorari review.

III. ANALYSIS

¶12 Plaintiffs raise two issues on certiorari: (1) that COCA did not decide the opinion in accord with this Court's standards on summary judgment and (2) the need to clarify Oklahoma law regarding what demands are required preceding the filing of a shareholder derivative lawsuit pursuant to title 12, section 2023.1 of the Oklahoma Statutes.

¶13 Pleading requirements for derivative actions are found in the Oklahoma General Corporation Act, 18 O.S.2022, §§ 100112 O.S.2022, §§ 2001See Bank of the Lakes, Langley, Okla. v. First State Bank, Ketchum, Okla., 1985 OK 81708 P.2d 1089 

¶14 On certiorari, Plaintiffs claim that considering the totality of their pre-suit communications, they conveyed a satisfactory pre-suit demand. Defendants assert that the only communication from Plaintiffs that was a proper pre-suit demand was the November 23 email, which did not provide adequate time for consideration of the demand. Title 12, section 2023.1 provides:

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the petition shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law. The petition shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

12 O.S.2022, § 2023.1

¶15 This statute mirrors Delaware's language regarding derivative actions. See Delaware Chancery Court Rule 23.1. 

¶16 In Oklahoma, a stockholder may only bring a derivative action when the corporation refuses to maintain or defend an action. Hargrave v. Canadian Valley Elec. Co-op., Inc., 1990 OK 43792 P.2d 50Id., ¶¶ 11--12, 792 P.2d, at 54. Whether the action would have been futile depends on the facts and circumstances of each case and the determination lies within the discretion of the trial court. Id., ¶ 12, 792 P.2d, at 54--55. Demand "is presumptively futile where the directors are antagonistic, adversely interested, or involved in the transactions attacked." Id., ¶ 13, 792 P.2d, at 55 (quoting Lewis v. Graves, 701 F.2d 245, 248 (2d Cir. 1983)). Demand should not be required "if the allegations in the petition permit the inference by the court that the trustees or directors upon whom demand would be made 'lack the requisite disinterestedness to determine fairly whether the corporate claim should be pursued.'" Hargrave, 1990 OK 43

¶17 But, by making "a demand, a shareholder plaintiff tacitly concedes the independence of a majority of the board to respond." Spiegel v. Buntrock, 571 A.2d 767, 777 (Del. 1990); see also Egleston v. McClendon, 2014 OK CIV APP 11318 P.3d 210Spiegel, 571 A.2d, at 775. Plaintiffs conceded the independence of the Board by making a pre-suit demand for the Board to file suit. 

¶18 Plaintiffs argue that through all their prior communications with the board, they made a pre-suit demand much earlier than November 23, 2021. Their earlier communications, however, did not rise to the level of a demand. "At a minimum, a demand must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief." Allison on Behalf of Gen. Motors Corp. v. Gen. Motors Corp., 604 F. Supp. 1106, 1117 (D. Del. 1985), aff'd, Allison on Behalf of Gen. Motors Corp. v. Gen. Motors Corp., 782 F.2d 1026 (3d Cir. 1985).

¶19 A demand must embody a specific request for the board to take legal action on behalf of the corporation. This clear request is required because by making a pre-suit demand a shareholder concedes the independence of the board to respond and essentially waives a futility claim. Plaintiffs' communications with the Board do not make any demand for the Board to file a lawsuit until the November 23, 2021 email. Plaintiffs never made a pre-suit demand regarding Ms. Moran prior to amending their petition to add her as a defendant.

¶20 Although the statute does not set out a specific time for a pre-suit demand to be made in order for the Board to investigate and make a decision, we agree with COCA that the Board should be allowed a reasonable amount of time to conduct their investigation, and what is reasonable may differ depending on the facts of the case. The demand requirement is not a mere formality. The question is whether the time between the demand and the filing of the lawsuit was sufficient to permit the Board to discharge its duty to properly consider the demand. In this case it was not.

¶21 "The business judgment rule is a presumption that in making a business decision, not involving self-interest, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Spiegel, 571 A.2d, at 774. "Absent an abuse of discretion, that judgment will be respected by the courts. The burden is on the party challenging the decision to establish facts rebutting the presumption." Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984). Under the business judgment rule, "majority decisions [of the board] are left undisturbed unless there is a clear showing that the majority interest has committed a breach of trust." Warren v. Century Bankcorporation, Inc., 1987 OK 14741 P.2d 846

Whenever any action or inaction by a board of directors is subject to review according to the traditional business judgment rule, the issues before the Court are independence, the reasonableness of its investigation and good faith. By electing to make a demand, a shareholder plaintiff tacitly concedes the independence of a majority of the board to respond. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation.

Spiegel, 571 A.2d, at 777. The burden to rebut the business judgment rule is on the party challenging the decision of the board. Plaintiffs failed to show that the Board's refusal to meet its demand to file suit within three days was not in good faith or that Board's investigation, or lack thereof, was unreasonable given the time allowed by the request. 

¶22 "When evidence is presented showing the existence of uncontroverted material facts, the burden shifts to the opposing party to identify those material facts he or she alleges remain in dispute and provide supportive evidentiary materials justifying trial on the issue. In attempting to show the existence of a question that must be tried, the party may not rely on bald contentions that facts exist to defeat the motion." Okla. Dep't of Sec. ex rel. Faught v. Wilcox, 2011 OK 82267 P.3d 106

CONCLUSION

¶23 We find the three days between the pre-suit demand and filing a lawsuit did not allow the Board sufficient time to conduct a good faith investigation into the matter. We hold the trial court did not err in finding Defendants were entitled to judgment as a matter of law and granting summary judgment in favor of Defendants. The judgment of the district court is affirmed.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS' OPINION
VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.

Rowe, C.J., Kuehn, V.C.J., Winchester, Edmondson, Combs, Gurich, Darby, Kane, JJ., concur.

Jett, J. (by separate writing), concurs in result.

FOOTNOTES

(a) Pleading Requirements. The complaint in a derivative action must:

(1) state with particularity:

(A) any effort by the derivative plaintiff to obtain the desired action from the entity; and

(B) the reasons for not obtaining the action or not making the effort; and

(2) allege facts supporting a reasonable inference that the derivative plaintiff has standing to sue derivatively under the law governing the entity.

Del. Ch. Ct. R. 23.1

Generally, our review of an issue on certiorari to the Court of Civil Appeals is based upon a party (1) preserving the error in the trial court with a proper trial record, (2) seeking appellate review of the issue in the context of an appealable order with a supporting appellate record, (3) assigning the preserved error on appeal by a petition in error, and (4) raising the assigned error in an appellate brief with supporting authority, and (5) raising the issue in a petition for certiorari with authority and argument.

Beyrer v. The Mule, LLC, 2021 OK 45496 P.3d 983

See Reddell v. Johnson, 1997 OK 86942 P.2d 200

. . . . In the statement, the adverse party or parties shall set forth and number each specific material fact which is claimed to be in controversy and reference shall be made to the pages and paragraphs or lines of the evidentiary materials. . . . .  If the motion for summary judgment or summary disposition is granted, the party or parties opposing the motion cannot on appeal rely on any fact or material that is not referred to or included in the statement in order to show that a substantial controversy exists.

R. for Dist. Ct. of Okla., 12 O.S.2022, ch. 2, app.2, R. 13(b).

State ex rel. Okla. State Bd. of Med. Licensure & Supervision v. Rivero, 2021 OK 31489 P.3d 36

 

 

JETT, J., concurring in result:

¶1 I agree that the trial court properly granted summary judgment for Defendants. In my view, however, the business judgment rule is not why Defendants prevail.

¶2 Plaintiffs filed this shareholder derivative suit only seven days after making demand on Barrington Homeowners Association, Inc.'s (Barrington) board of directors. 

I.

¶3 A fundamental principle of corporate law is that the management of a corporation is entrusted to its board of directors. The role of shareholders, by contrast, is "purposefully indirect." Int'l Bhd. of Teamsters Gen. Fund v. Fleming Companies, Inc., 1999 OK 3975 P.2d 907

Grimes v. Donald, 673 A.2d 1207, 1215 (Del. 1996). Functionally, this means

[u]nless the board of directors permits the stockholder to proceed, a stockholder only can pursue a cause of action belonging to the corporation if (i) the stockholder demanded that the directors pursue the corporate claim and they wrongfully refused to do so or (ii) demand is excused because the directors are incapable of making an impartial decision regarding the litigation.

United Food and Com. Workers Union v. Zuckerberg, 250 A.3d 862, 876 (Del. Ch. 2020), aff'd, 262 A.3d 1034 (Del. 2021); see also Hargrave v. Canadian Valley Elec. Co-op., Inc., 1990 OK 43792 P.2d 50. United Food, 250 A.3d at 876. "Once a stockholder has made a demand, he is precluded from arguing that a demand is excused." Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong, 66 A.3d 963, 976 (Del. Ch. 2013).

¶4 This is the unusual case where a shareholder made demand but filed suit before the board of directors formally refused to act. See Rich, 66 A.3d at 976

("Relatively few Delaware cases have arisen in which a stockholder attempts to move forward with a derivative suit before a board formally responds to the stockholder's demand."). "After a shareholder makes a demand on the board, the shareholder must allow the board a reasonable time to investigate and respond to the claim before filing suit or the court will consider that suit premature." Charal Inv. Co. v. Rockefeller, Civ.A. No. 14397, 1995 WL 684869, at *3 (Del. Ch. Nov. 7, 1995) (citing Abbey v. Comput. & Commc'n Tech. Corp., 457 A.2d 368, 375 (Del. Ch. 1983)). When a shareholder files suit before the board formally responds to the demand, the derivative action will be dismissed unless the stockholder can show that the failure to formally respond is a de facto denial and the denial is wrongful. Rich, 66 A.3d at 976--77.

¶5 To analyze potential de facto denials, courts employ different standards depending on whether a board has taken no action at all or has taken some action but not yet issued a formal response. Steinberg ex rel. Bank of Am. Corp. v. Mozilo, 135 F.Supp.3d 178, 183 (S.D.N.Y. 2015) (applying Delaware law); Rich, 66 A.3d at 976. If a board has taken no action in response to the demand, "[t]he question . . . is whether the time between demand and filing of suit was sufficient to permit the Board of Directors to discharge its duty to consider the demand." Steinberg, 135 F.Supp.3d at 183 (quoting Allison v. Gen. Motors Corp., 604 F.Supp. 1106, 1117 (D. Del. 1985)). When a board has taken some action but not yet given a formal response, the board's consideration of the demand is "entitled to the benefit of the business judgment rule if taken in a manner that was informed and in good faith." Rich, 66 A.3d at 977. While timeliness still figures into the equation, a plaintiff must show at the pleading stage reasonable doubt that the board complied with its fiduciary duties.

Id.

II.

¶6 The dispositive question in this case is whether the brief period between demand and litigation was a de facto denial of the demand. 

¶7 However, my view on the business judgment rule's inapplicability does not change the outcome in this case. Regardless how quickly a board begins to process a shareholder demand, the board is entitled to a reasonable amount of time to discharge its duty to consider the demand. Plaintiffs thwarted the board's prerogative to analyze the alleged claims by prematurely initiating litigation. Three business days flanking the Thanksgiving holiday is an objectively unreasonable amount of time for the board to exercise its fiduciary duty to investigate the demand and make a reasoned decision on whether to embark on litigation. Plaintiffs provide no evidence that a lightning-fast decision by the board was necessary. There is no indication that additional harm would befall the corporation without swift action.

* * *

¶8 Considering the facts of this case, the Barrington board of directors was not afforded a reasonable time to respond to Plaintiffs' demand. Defendants are entitled to summary judgment because Plaintiffs' derivative lawsuit is premature.

FOOTNOTES

Rich, 66 A.3d at 976 ("By making a litigation demand on a board of directors, a stockholder concedes that the board is able to evaluate the demand, free from concerns of conflicts of interest or lack of independence.").