OSCN Found Document:SHAWAREB v. SSM HEALTH CARE OF OKLAHOMA

 

 
 

 
 SHAWAREB v. SSM HEALTH CARE OF OKLAHOMA
2020 OK 92
Case Number: 117633
Decided: 11/24/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 92, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

LAMEES SHAWAREB and FAROUK SHAWAREB, Plaintiffs/Appellants,
v.
SSM HEALTH CARE OF OKLAHOMA, INC., d/b/a BONE AND JOINT HOSPITAL AT ST. ANTHONY and SAVANNAH PETTY, Defendants/Appellees.

CERTIORARI TO THE OKLAHOMA COURT OF CIVIL APPEALS, DIVISION NO. III

Â¶0 Plaintiffs filed an action based upon alleged negligence by defendants when one of the plaintiffs was staying in a hospital after surgery and received a burn from spilled hot water. The Honorable Trevor Pemberton, District Judge of the District Court for Oklahoma County, granted defendants' motion to strike plaintiffs' witness list and defendants' motion for summary judgment. Plaintiffs appealed and the Court of Civil Appeals, Division III, affirmed. We granted plaintiffs' petition for certiorari. We hold: reversible error occurred when summary judgment was granted based upon the trial court's ruling on a motion to strike a list of trial witnesses when plaintiffs were not provided time to respond to the motion to strike as granted by District Court Rule 4.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL
APPEALS VACATED; JUDGMENT OF THE DISTRICT COURT REVERSED; AND
THE CAUSE REMANDED TO DISTRICT COURT FOR FURTHER PROCEEDINGS 

Kenyatta R. Bethea, Holloway Bethea & Osenbaugh, Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

Alexander C. Vosler, Alexandra G. Ah Loy, and Leslie L. Jones, Johnson Hanan Vosler Hawthorne & Snider, Oklahoma City, Oklahoma, for Defendants/Appellees.

EDMONDSON, J.

Â¶1 The two primary issues raised on certiorari are whether (1) the trial court's summary judgment procedure created reversible legal error, and (2) an expert medical opinion was necessary for plaintiffs on summary judgment. Plaintiffs argue an expert is not necessary to explain a hospital's standard of care and causation of plaintiff's injury when (1) a hospital employee gave plaintiff, as a hospital patient, a cup of hot water to make hot tea, (2) the patient was receiving narcotic therapy altering her ability to make a cup of hot tea in a safe manner, (3) this was the first cup of hot water received by patient during her hospitalization, (4) the employee fixed a lid securely on the top of the cup, (5) the employee did not assist the patient with the lid, and (6) upon the patient receiving the cup and attempting to remove the lid the water spilled on the patient causing deep second and "potential third degree" burns to patient's thigh.

Â¶2 We hold the summary judgment must be reversed due to a prejudicial procedural error in the trial court. The trial court granted defendants' motion to strike plaintiffs' witness list when the list did not contain the name of plaintiffs' expert witness used by plaintiffs when responding to defendants' motion for summary judgment. The trial court ruled plaintiffs failed to have an expert witness necessary for a medical negligence action, and then granted summary judgment to defendants. The trial court's ruling granting the motion to strike and summary judgment occurred eight days after the motion to strike was filed. Oklahoma District Court Rule 4(e) allows fifteen days for a party to respond to a motion to strike. We need not adjudicate whether a medical expert's opinion is necessary to explain the standard of care for a hospital or the effect of narcotics on the patient's ability to use hot water in the circumstances presented by the parties in this case. However, we explain the case as presented by the parties for the context of the motion to strike.

Â¶3 Lamees Shawareb was a patient in the Bone and Joint Hospital at St. Anthony for postoperative care after her knee surgery. This was her second knee surgery at the same hospital where she had obtained favorable results, except for one incident which occurred after her second surgery on the day she was discharged from the hospital. She was handed a cup of hot water by a hospital employee and when Lamees tried to remove the lid from the cup of hot water it spilled on her thigh causing burns. She had not previously been given a cup of hot water to make tea during her hospitalization or warned of the water's temperature when the cup was handed to her.

Â¶4 The record on appeal states Lamees was "seen at Mercy" the day after she was burned, and she was treated at "Baptist Burn Center" for "deep second degree burns and potential third degree burns" after her discharge from Bone and Joint Hospital.[1] Lamees Shawareb and her spouse, Farouk Shawareb, brought an action in District Court alleging the hospital and its employees failed to properly monitor a hot beverage machine, hot beverages were in excess of an acceptable and reasonable temperature for the public and a patient on narcotic therapy, and scalding hot water was served to Lamees without warning her concerning the water's temperature.

Â¶5 Plaintiffs state the business which monitored the vending machines at the hospital "received a complaint that the liquid coffee machines at St. Anthony's were too hot and needed to be tuned down." An employee of the business servicing the coffee machine testified concerning a work order he received in March of 2016 to make a service call at the hospital because "liquid coffee machines may be too hot, need to be turned down." Further, a comment was made to him from an employee in his dispatch center stating "several people have been burnt by machine." A photocopy of poor quality is attached to plaintiffs' response, and it appears to be a work order identified by the employee and stating "several people have been burnt by the machine."

Â¶6 The vending machine employee testified that while documents had been previously created relating to servicing a machine's temperature setting there was no longer any document that he knew of showing his test results for the vending machine in March 2016 because the business had been "transitioning from paper to internet." He testified that while he then currently takes video of a machine's temperature settings during servicing no such video was available for when he serviced the machine after Lamees received her burns. He testified his recollection was that the machine was checked "and it was already at the minimum so there was no action [taken at that time to change the temperature]." He testified he serviced the machine again in November 2017 and it was operating at the correct temperature. The vending machine company was a party in the trial court proceeding.

Â¶7 The hospital and its employee filed a combined motion for summary judgment. Defendants stated a nurse assistant (or "nurse aid") brought Lamees a cup of hot water at Lamees' request to make a cup of tea, and Lamees spilled the hot water on herself. Plaintiffs filed a response to defendants' motion for summary judgment on October 4, 2018. Plaintiffs filed their "final witness and exhibit list" on Wednesday, October 17, 2018, and it did not include the name of plaintiffs' expert they relied on in their response to defendants' motion for summary judgment. On October 26, 2018, defendants filed both a motion to strike plaintiffs' expert witnesses and a reply for summary judgment.

Â¶8 Defendants' motion to strike plaintiffs' expert witnesses was based upon: (1) Plaintiffs did not name this witness in plaintiffs' final witness and exhibit list filed October 17th; (2) No expert witness was named in this filing; (3) The trial court's previously entered scheduling order required preliminary list of witnesses and exhibits be exchanged no later than 60 days prior to pretrial conference (60 days prior to November 14, 2018); and (4) The final exchange of witness lists was required "30 days prior to Pretrial" conference.[2] The scheduling order states in the same numbered paragraph setting deadlines for the witness lists that "additional witness/exhibits shall be stricken by the Court, absent extraordinary circumstances." This scheduling order states the pretrial conference is on November 14, 2018. The sole objection of defendants to plaintiffs' expert testifying at trial was plaintiffs' failure to include the name of plaintiffs' expert on the final witness list filed by plaintiffs within the time limit set by the scheduling order.[3] Defendants argued "Plaintiffs submitted their Final Witness and Exhibit List two days late on October 17, 2018."[4]

Â¶9 Defendants replied to plaintiffs' response on summary judgment. They argued plaintiffs' expert, a "certified nurse assistant" did not possess authority to prescribe or administer narcotics and was "clearly not qualified to render the neurologic and narcotics-related opinions relied upon by Plaintiffs."[5] They argued the name of this witness was not included in plaintiffs' final list of witnesses and exhibits. Defendants asserted plaintiffs did not produce any qualified expert testimony to support their claims. They stated Lamees "had not yet taken her narcotics at the time she requested the hot water."[6] They argued "It is uncontroverted that Mrs. Shawareb was not under the influence of narcotics at the time she spilled the hot water."[7] Further: "Absent a qualified physician expert who can testify about the effects of narcotics on a person's neurological status, Plaintiffs cannot controvert these facts, and her arguments lack adequate evidentiary support."[8]

Â¶10 Defendants expressly stated on summary judgment "the affirmative defense of assumption of the risk is dispositive of this matter."[9] Assumption of the risk is a defense raising a fact issue decided by a jury as required by the Oklahoma Constitution.[10] The two well-known "exceptions" to submitting the defense to a jury are (1) if "the plaintiff fails to present evidence showing primary negligence on the part of the defendant, or (2) if there are no material facts in dispute, and reasonable minds exercising fair and impartial judgment could not reach differing conclusions."[11] The first exception, "lack of primary negligence" exception, is not, in a strict sense, an exception for applying or adjudicating the affirmative defense.[12] Rather, this exception is the fundamental premise underlying all negligence suits stating a defendant is not liable without primary negligence being shown.[13] In other words, the affirmative defense need not be adjudicated by a jury when the negligence of the defendant is not shown by the plaintiff as required for the procedural context, which is summary judgment in the matter before us. The second exception, "no material facts in dispute," relates to no dispute on the facts relating to the assumption of risk affirmative defense, as opposed to the facts relating to primary negligence.[14] The trial court focused on this first argument and examined whether a negligence cause of action had been shown by plaintiffs.

Â¶11 A summary judgment process requires the parties to raise pleaded and unpleaded uncontroverted material facts on the material legal issues relating to whether a single inference is created in favor of the movant for a judgment on the merits.[15] Defendants challenged plaintiffs' action and argued no primary negligence of defendants was shown, and in the summary judgment context this challenge argued that plaintiffs' negligence cause of action failed to possess one or more of its required elements.[16]

Â¶12 For example, defendants argued and the trial court expressly ruled "Plaintiffs failed to establish a duty on the part of Defendants as to an individual in the same or similar circumstances." We have noted the duty element in the context of a negligence action against a hospital alleging improper medical care: "A hospital has the duty to provide for the care and protection of its patients, and in the performance of this duty the hospital is required to exercise such reasonable care as the patient's known condition requires."[17] Hospital does not dispute the existence of this duty in a general sense. Hospital argues that if plaintiffs' action is judicially construed as based upon an alleged breach of a medical professional standard relating to (1) a patient's pain management therapy, or (2) hospital-provided food and beverage service, or (3) a combination of both of pain management therapy and food services; then plaintiffs must provide a qualified expert witness testifying on the nature of this duty and standard by the hospital.

Â¶13 Hospital indicates a qualified medical expert must testify on the causation element in the negligence action and link the alleged breach of duty to the cause of plaintiffs' injury. Plaintiffs expressly raise the issue of Lamees' exposure to pain medication as a causal element in her negligence action. We explained in Christian v. Gray,[18] causation of a person's legal injury resulting from exposure to a substance is usually analyzed in terms of both (1) general causation, which relates to whether a substance is "capable of causing a particular injury in the general population," and (2) specific causation, which "is whether that substance caused the particular individual's injury."[19] We have recently repeated specific causation is the cause of the particular individual's injury.[20] There is no discussion before us from an expert identifying typical, but not necessarily required, information to support a cause of action based upon a prescribed drug,[21] such as long-acting or short-acting narcotics, narcotic metabolization, half-lives of narcotics, or the effects of named and prescribed narcotics on Lamees during hospitalization at the time of her injury.[22]

Â¶14 Plaintiffs rely upon the statement of their expert witness, an argument no medical expert witness is necessary, and an argument based upon an alleged improper procedure by the trial court. They assert their expert possessed "just as much training and experience" as the hospital employee who served Lamees the hot water. They also rely upon one exception to the necessity of providing an expert's opinion when the fact to be shown "lies within the common knowledge of lay persons."[23] Plaintiffs' arguments are essentially that (1) a lay jury has a common knowledge of opiates and their properties on individuals as well as the steps for making hot tea, and (2) Lamees will testify on the effect of hospital-provided pain medication upon her ability to safely make a cup of hot tea when hot water was served to her in the manner used by the hospital's employee.

Â¶15 Upon review of the appellate record and arguments made by the parties on certiorari, we conclude an error in the trial court's procedure when rendering summary judgment requires a reversal of judgment with remand to the District Court for further proceedings without this Court adjudicating issues relating to the necessity of an expert witness for plaintiffs' cause of action.

Â¶16 Plaintiffs state on certiorari the District Court ruled on the defendants' motion to strike six days after it was filed without allowing plaintiffs fifteen days to respond to the motion in violation of District Court Rule 4(e). The motion to strike plaintiffs' experts was filed October 26, 2018, the hearing on defendants' motion for summary judgment occurred on November 3, 2018, and the motion to strike was granted at the same hearing. Rule 4(e) provides as follows.

e. Any party opposing a motion, except those enumerated in Section c above, shall serve and file a brief or a list of authorities in opposition within fifteen (15) days after service of the motion, or the motion may be deemed confessed.

12 O.S.Supp.2013, Ch. 2, App., Rules of the District Courts, Rule 4(e).

Rule 4(e) references motions in Rule 4(c) as outside the scope of Rule 4(e), but a motion to strike plaintiffs' experts is not listed as one of the motions in Rule 4(c).[24] The fifteenth day after October 26, 2018, was Saturday November 10, 2018. Plaintiffs filed an "Amended Final Witness and Exhibit List" on Thursday, November 8, 2018, and included the expert plaintiffs used in their response to defendants' motion for summary judgment. This filing appears to have been without express permission of the trial court.

Â¶17 Two challenges to plaintiffs' expert were made by defendants with two requests to strike and they must be analyzed separately. The first is defendants' separately filed motion to strike on October 26, 2018,and this motion was for the purpose of testimony occurring at a trial. The sole basis for the motion to strike was plaintiffs' failure to place the name of their expert on their filed expert list. The second request to strike was part of defendants' reply on summary judgment which was also filed on October 26, 2018. Defendants' motion to strike plaintiffs' expert became a part of a motion incorporated into the summary judgment procedure by defendants' reply.

Â¶18 Defendants' reply on summary judgment stated plaintiffs' expert had not been endorsed as an expert for trial and as a result the expert's "declaration is not what the evidence will be at trial, and the declaration is inadmissible."[25] Defendants' reply combined this failure to endorse as a reason to strike with an additional assertion "such declaration must be stricken" because plaintiffs' expert was no expert. Defendants argued plaintiffs could not defeat summary judgment sought by defendants because of the absence of an expert for plaintiffs. Their argument relied on the rule that in responding to a motion for summary judgment a plaintiff need only show evidence of disputed material facts that, if proven at trial, would allow plaintiff to succeed on plaintiff's claim,[26] but plaintiffs could not succeed without an expert witness.

Â¶19 We address first the summary judgment challenge to the expert's qualifications and the defendants' request to strike the expert's statement as such relates to the procedure used in the trial court. A challenge to a witness testifying as an expert includes a factual inquiry including an examination of the knowledge, skill, experience, training, and education possessed by the witness.[27] An opinion may be provided by an ordinary person whose experience or perception provides him or her with knowledge which concerns some matter involved in the trial,[28] and a trial court adjudicates both a lay person's experience and an expert's experience (and any other factors) qualifying the person as an expert and whether expert's opinion assists the trier of fact.[29]

Â¶20 It is well-settled that the qualification of an expert witness is generally within the sound discretion of the trial court, and the exercise of discretion will not be reversed on appeal except when an abuse of discretion occurs.[30] Appellate review to determine an abuse of a trial court's discretion requires an actual antecedent exercise of that judicial discretion by the trial court on the issue reviewed. We do not make first instance determinations of disputed non-jurisdictional law issues or contested fact issues.[31] When looking first to the trial court's judgment and construing it to determine if judicial discretion was actually exercised on the issue we are asked to review, we examine the clear and unambiguous language of the instrument, since such language is controlling.[32]

Â¶21 The clear language used in the trial court's judgment shows no exercise of judicial discretion on defendants' challenge to the qualifications of plaintiffs' expert witness. The summary judgment order states in part the following.

1. Plaintiffs did not endorse .., [name of the witness] as an expert witness to testify at trial; therefore her declaration is stricken as inadmissible.
2. Plaintiffs have not endorsed any expert witnesses. As a result, Plaintiffs have no qualified medical expert testimony to support their claims.
3. Plaintiffs have failed to provide sufficient evidence in support of their "medical negligence" action against Defendants.

The trial court order grants defendants' request to strike plaintiffs' expert, but solely on the ground the name of the witness was not on plaintiffs' filed list of witnesses. The trial court did not adjudicate whether plaintiffs' expert was qualified as an expert, and we may not give that issue a first-instance adjudication.

Â¶22 A party must be afforded a reasonable opportunity to respond to an opposing party's motion for summary judgment.[33] During the summary judgment hearing, plaintiffs' counsel affirmatively requested additional time "to list somebody specifically" as a witness.[34] Plaintiffs' counsel also made the argument plaintiffs need not use in a summary judgment proceeding the actual expert witness plaintiffs would also use at trial, and counsel could pick which expert the plaintiffs would use for summary judgment and which expert(s) for trial. Plaintiffs' counsel also argued it was permissible to designate experts without a name but by professional degree or certification such as R.N. or M.D., and submit the name to the court and opposing counsel at a later date.

Â¶23 Plaintiffs' counsel argued discovery was ongoing and he had requested a deposition of one of the hospital's nurses. Defendants' counsel at the hearing stated he had no recollection of the deposition request and a discussion on the subject. He agreed he received a written request from plaintiffs' counsel the day before the hearing. Plaintiffs' counsel stated he had discussions relating to additional discovery with defense counsel for the vending machine company.

Â¶24 Counsel for the hospital argued the interpretation of District Court Rule 13 by plaintiffs' counsel was "fundamentally unfair" to a defendant who had met the pretrial deadlines set by the trial court. While agreeing plaintiffs could select any expert witness they wanted, he argued plaintiffs must pick at least one expert witness in a timely manner for a party's list of witnesses at trial and also place this name in a timely filed witness list. Defendants argued plaintiffs could not use an expert witness for plaintiffs' response on summary judgment if no expert witness was listed by name as an expert witness at trial.

Â¶25 During the hearing the trial court stated to plaintiffs' counsel the court was striking the affidavit of plaintiffs' expert "for purposes of this Motion for Summary Judgment" because she was "not timely listed in compliance with the Scheduling Order and no request formally having been previously submitted to the Court." We construe the language referencing a formal request as no previous written request by counsel filed with the court. Some motions may be made by an oral motion in court pursuant to 12 O.S. Â§ 2007, [35] however District Court Rule 5 (C), Pretrial Proceedings, states in part: "The scheduling order shall issue as soon as feasible after the case is at issue. A schedule shall not be modified except upon written application by counsel and by leave of the judge assigned to the case upon a showing of good cause.[36] There is nothing in the appellate record before us suggesting that plaintiffs' counsel followed this rule.

Â¶26 The purpose of the summary adjudication procedure is to avoid unnecessary jury trials,[37] and narrow the scope of a subsequent trial by a pre-trial identification of non-triable fact issues.[38] Generally, a plaintiff has a right to select which witnesses to use[39] in support of his or her case, subject of course to the usual restrictions as to evidence and witnesses.[40] The issue in this appeal is not what plaintiffs indicated at the hearing, i.e., a limitation on a plaintiff's ability to call and present witnesses selected by plaintiff. Neither is the issue what defendants indicated at the hearing, i.e., a plaintiff failing to follow a scheduling order, failing to seek a written application for additional time, and attempting to control the judicial docket. Clearly, a trial court may enforce its pretrial order by excluding a trial witness not listed on its pretrial order.[41] The issue is a trial court simultaneously ruling on a motion to strike witnesses and a motion for summary judgment when the merits of the latter motion were based upon the former, and the date of the simultaneous ruling occurred when the opposing party had not responded to the motion to strike but still possessed time to do so pursuant to a Uniform District Court Rule.

Â¶27 The trial court made the motion to strike the expert witness a part of the summary judgment process when the court used the motion to strike as a basis for adjudicating no expert witness statement was submitted by plaintiffs on summary judgment. A flaw with using this procedure is: (1) The trial court granted the motion eight days after it was filed when plaintiffs possessed a Rule 4(e) fifteen days to respond to the motion, and (2) The trial court used this procedure as a basis for stating plaintiffs' failed to provide facts in support of their cause of action, and then granted a judgment on the merits to defendants based upon the court's action granting the motion to strike.

Â¶28 In Andrew v. Depani-Sparkes,[42] a summary judgment was granted to a defendant prior to the trial court's Daubert hearing on excluding plaintiffs' experts. Defendants' motion for summary judgment was based upon excluding one of plaintiffs' experts on the issue of causation.[43] We held: "A trial court commits reversible error by making a sua sponte Daubert decision as a basis for granting summary judgment without notice to a party that the party's testimony is subject to being excluded as part of that adjudication."[44] The trial court used the principle of Daubert and its progeny as a basis for granting summary judgment prior to the scheduled hearing on the Daubert issue. In our case today, the District Court granted summary judgment to defendants on the basis of a motion when on the date of summary judgment hearing the plaintiffs still had an opportunity to respond for an additional seven days.

Â¶29 What we said in Andrew v. Depani-Sparkes, applies herein as well: "Fundamental fairness cannot be afforded except within a framework of orderly procedure, and that fairness includes giving notice of certain judicial events altering legally cognizable rights."[45] A core element is an opportunity to be heard as well as notice of the judicial altering event.[46] Plaintiffs' petition in error and petition for certiorari raised their lack of an opportunity to respond to the motion to strike. Defendants responded to this argument on certiorari and stated the trial court had discretion to enforce its scheduling order. Whether a party's procedural due process right was violated by a judicial procedure is reviewed by this Court de novo,[47] and we may review the issue although an appellant has failed to preserve the error in the lower tribunal.[48]

Â¶30 Procedural error may be harmless for the purpose of appellate review, and probability of a change in the outcome of a lawsuit is the test of prejudice this Court has long employed when analyzing alleged errors of practice and procedure.[49] There is no doubt the failure to provide plaintiffs their rule-mandated time to respond to the motion to strike was prejudicial when the trial court used its ruling on the motion to strike as a basis for granting summary judgment on the merits. A party's reasonable opportunity to respond on summary judgment includes "a reasonable opportunity to present all material made pertinent to such a motion by the rules for summary judgment," and a failure to provide this opportunity is reversible error.[50]

Â¶31 The petition for certiorari to the Court of Civil Appeals was previously granted. The opinion of the Court of Civil Appeals is vacated, the judgment of the District Court is reversed, and the matter is remanded to the District Court for further proceedings consistent with this opinion.

Â¶32 CONCUR: GURICH, C.J.; DARBY, V.C.J.; KAUGER, WINCHESTER, EDMONDSON, COLBERT, and COMBS, JJ.

Â¶33 DISSENT: KANE, and ROWE, JJ.

FOOTNOTES

[1] Record on Accelerated Appeal, Tab 9, plaintiffs' response to defendants' motion for summary judgment, October 4, 2018, Exhibit 5, pg. 2 (Lamees' patient history provided at "OU Physicians Plastic, Aesthetic & Reconstructive Surgery" which states care after discharge at "Baptist Burn Center," and also includes an OU physician's physical exam with findings stating Lamees had areas with "obviously deeper burns than others," "some areas that were consistent with deep second degree burns and some areas that were between deep second degree and possibly third degree burns."). The Paul Silverstein Burn Center is located at Integris Baptist Medical Center in Oklahoma City.

Lamees' deposition states she was "seen at Mercy" the day after she received the burns. Record on Accelerated Appeal, Tab 8, defendants' motion for summary judgment, Exhibit "H," pg. 29. Mercy health system includes a collection of hospitals and clinics in Oklahoma.

[2] Record on Accelerated Appeal, Tab 11, defendants' motion to strike plaintiffs' expert witnesses, October 26, 2018, Exhibit 1, Scheduling Order, July 16, 2018, Â¶ 3.

[3] The scheduling order states a different procedure for an objection to an expert's testimony other than identifying the expert in a witness list. The order provides an objection to expert testimony will be included in the pretrial conference order, a briefing schedule set by the court, and a Daubert hearing set at pretrial. Record on Accelerated Appeal, Tab 11, defendants' motion to strike plaintiffs' expert witnesses, October 26, 2018, Exhibit 1, Scheduling Order, July 16, 2018, Â¶ 7.

[4] Record on Accelerated Appeal, Tab 11, defendants' motion to strike plaintiffs' expert witnesses, October 26, 2018, pg. 2.

[5] Record on Accelerated Appeal, Tab 12, defendants' reply to plaintiffs' response to defendants' motion for summary judgment, October 26, 2018, pg. 4.

[6] Record on Accelerated Appeal, Tab 12, defendants' reply to plaintiffs' response to defendants' motion for summary judgment, October 26, 2018, pg. 2.

[7] Record on Accelerated Appeal, Tab 12, defendants' reply to plaintiffs' response to defendants' motion for summary judgment, October 26, 2018, pg. 2.

[8] Record on Accelerated Appeal, Tab 12, defendants' reply to plaintiffs' response to defendants' motion for summary judgment, October 26, 2018, pg. 3.

[9] Record on Accelerated Appeal, Tab 12, defendants' reply to plaintiffs' response to defendants' motion for summary judgment, October 26, 2018, pg. 5.

[10] Okla. Const. Art. 23 Â§ 6: "The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury." See Byford v. Town of Asher, 1994 OK 46, 874 P.2d 45, 47 ("We have honored the plain meaning of these words [in Art. 23 Â§ 6], and have repeatedly required the issue of assumption of risk to be submitted to the jury.").

[11] Reddell v. Johnson, 1997 OK 86, Â¶ 13, 942 P.2d 200, 203.

[12] Reddell v. Johnson, at Â¶ 14, 942 P.2d at 203 ("the 'lack of primary negligence' exception . . . is really not an exception").

[13] Reddell v. Johnson, at Â¶ 14, 942 P.2d at 203.

[14] Thomas v. Holliday By and Through Holliday, 1988 OK 116, 764 P.2d 165, n. 8, 168 (Assumption of risk affirmative defense in negligence is often classified in three categories involving different facts, (1) express assumption of risk including an express contract, (2) implied primary assumption of risk including plaintiff's presumed consent to the risk based upon plaintiff's participation and the nature of the risk, and (3) implied secondary assumption of risk when the plaintiff knew of the unreasonable risk created by the defendant's conduct and voluntarily chose to encounter that risk.).

[15] Darrow v. Integris Health, Inc., 2008 OK 1, n. 17, 176 P.3d 1204, 1209 (comparing purposes of motions to dismiss and summary judgment); Indep. Sch. Dist. No. 52 of Okla. Cnty. v. Hofmeister, 2020 OK 56, Â¶ 28, 473 P.3d 475, 489 ("Summary judgment is an adjudication on the merits of the controversy.").

[16] A defendant's motion for summary judgment may argue no cause of action exists possessed by plaintiff because either (1) the absence of a single element of the action [or more than one element of the action] or (2) the presence of all elements of a defense to the action. McGee v. Alexander, 2001 OK 78, Â¶ 23, 37 P.3d 800, 806 (the absence of any one element used to define a cause of action is enough to defeat this action); Akin v. Missouri Pacific Railroad Co., 1998 OK 102, Â¶ 9, 977 P.2d 1040, 1044 (a defendant must show either the absence of at least one essential element to plaintiff's cause of action, or the presence of all elements necessary to an affirmative defense to the cause of action).

[17] Harder v. F.C. Clinton, Inc., 1997 OK 137, 948 P.2d 298, 304.

[18] 2003 OK 10, 65 P.3d 591.

[19] Christian v. Gray, 2003 OK 10, at Â¶ 21, 65 P.3d at 602.

[20] Nelson v. Enid Medical Associates, 2016 OK 69, Â¶ 38, 376 P.3d 212, 225. See 

Nelson, at Â¶Â¶ 38-61, 376 P.3d at 225-231 and the discussion of specific causation, internal causation, external causation, medical opinions concerning the medical use of vasopressin in a particular circumstance, and the different, and nonexhaustive, methods used for the proof of causation.

[21] These topics may be used in some courts regarding specific causation of a particular person's injury when the injury is attributed to narcotic dosage. See, e.g., Procaccini v. Lawrence Memorial Hospital, Inc., 175 Conn.App. 692, 168 A.3d 538, 548-550 (2017) (in the context of causation and a dose of methadone the court discussed concepts of metabolization, half-lives, and duration of effect for long-acting and short-acting narcotics).

We cite these examples showing what appears to be the type of action plaintiffs and defendants are litigating before us, and we expressly make no holding on proof necessary for plaintiffs' action because such holding would be hypothetical and advisory based upon our disposition herein on a procedural flaw in the summary judgment process. We do not address hypothetical and advisory issues in an appeal. Gaasch, Estate of Gaasch v. St. Paul Fire and Marine Insurance Company, 2018 OK 12, n. 23, 412 P.3d 1151, 1157.

[22] Plaintiffs' expert stated "Mrs. Shawareb was under the influence of of multiple narcotics...[o]piod analgesics,. Like Dilaudid and Ultran, both of which Mrs. Shawareb had been given secondary to her knee replacement...." This opinion did not expressly link specific narcotics and dosages to the time the Mrs. Shawareb was injured.

[23] Ellison v. Campbell, 2014 OK 15, Â¶ 15, 326 P.3d 68, 73.

[24] 12 O.S.Supp.2013, Ch. 2, App., Rules of the District Courts, Rule 4(c):

c. Motions raising fact issues shall be verified by a person having knowledge of the facts, if possible; otherwise, a verified statement by counsel of what the proof will show will suffice until a hearing or stipulation can be provided.

Every motion shall be accompanied by a concise brief or a list of authorities upon which movant relies. Unless the court directs otherwise, neither a brief nor a list of authorities shall be required with respect to any of the following motions:

(1) Motions for extensions of time, if the request is made before expiration of the time period originally prescribed, or as extended by previous orders,
(2) Motions to continue a hearing, pretrial conference or trial,
(3) Motions to amend pleadings or file supplemental pleadings,
(4) Motions to appoint a guardian ad litem,
(5) Motions for physical or mental examinations,
(6) Motions to add or substitute parties,
(7) Motions to enter or vacate default judgments,
(8) Motions to confirm sales,
(9) Motions to stay proceedings to enforce judgments,
(10) Motions to shorten a prescribed time period, and
(11) Motions for scheduling conferences and other settings.

[25] Record on Accelerated Appeal, Tab 12, defendants' reply to plaintiffs' response to defendants' motion for summary judgment, October 26, 2018, pg. 4.

[26] See, e.g., Beach v. Dept. of Public Safety, 2017 OK 40, n. 19, 398 P.3d 1, 6 ("However, if Defendants move for summary judgment, Plaintiff need only show evidence of disputed material facts that, if proven at trial, would allow her to succeed on her claim.") (emphasis omitted).

[27] 12 O.S. 2011 Â§ 2702 (a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise). See, e.g., Gaines v. Comanche County Medical Hospital, 2006 OK 39, Â¶Â¶ 18-19 & 23, 143 P.3d 203, 209-211, 24 A.L.R.6th 931 (nurse was qualified as an expert witness pursuant to 12 O.S.2001 Â§ 2702 by her knowledge, skill, experience, training and education).

[28] 12 O.S.2011 Â§ 2701 (opinion testimony by lay witness).

[29] 12 O.S. 2011 Â§ 2011 (2) (opinion must be helpful and not within 12 O.S. Â§ 2702); Nelson v. Enid Medical Associates, Inc., 2016OK 69, n. 53, 376 P.3d 212, 224 ("A witness's qualifications must not be conflated with the reliability of the witness's theory or technique, although it may be considered as a Daubert [v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)] factor.") (citation added).

[30] John v. Saint Francis Hospital, Inc., 2017 OK 81, Â¶ 28, 405 P.3d 681, 690; Williams Natural Gas Co. v. Perkins, 1997 OK 72, Â¶ 17, 952 P.2d 483, 489; Jones v. Stemco Manufacturing Co. Inc., 1981 OK 10, 624 P.2d 1044, 1046.

[31] Indep. Sch. Dist. No. 52 of Okla. Cnty. v. Hofmeister, 2020 OK 56, Â¶ 52, & n. 73, 473 P.3d 475, 498.

[32] Marshall v. OK Rental & Leasing, Inc., 1994 OK 87, 879 P.2d 132, 133, citing Lemons v. Lemons, 1951 OK 300, 238 P.2d 790, 792.

[33] Glenhurst Homeowners Ass'n, Inc. v. Xi Family Trust, 2014 OK 38, Â¶ 8, 330 P.3d 494, 496, ("it is also important that all litigants be given a reasonable opportunity to have their day in court, and to have their rights and liberties tried upon the merits"), quoting Cornett v. Carr, 2013 OK 30, Â¶ 13, 302 P.3d 769, 773.

[34] Appellee's Supplemental Record on Accelerated Appeal, Exhibit 6, Summary Judgment hearing transcript, pg. 22.

[35] Osage Nation v. Bd. of Commr's of Osage Cnty., 2017 OK 34, Â¶ 14 & n. 16, 394 P.3d 1224, 1232, citing Campbell v. Campbell, 1994 OK 84, 878 P.2d 1037, 1040 ("Case law also holds that oral motions are acceptable in this jurisdiction."); 12 O.S. 2011 2007(B)(1): "An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion."

[36] 12 O.S.Supp.2013, Ch. 2, App., Rules of the District Courts, Rule 5(C) (emphasis added).

[37] Flanders v. Crane Co., 1984 OK 88, 693 P.2d 602, 605 (the purpose of summary judgment is to avoid unnecessary jury trials) citing Flick v. Crouch, 1967 OK 131, 434 P.2d 256, 262.

[38] Vance v. Federal Nat. Mortg. Ass'n, 1999 OK 73, Â¶ 6, 988 P.2d 1275, 1278 ("summary process is available to litigants to identify and isolate non-triable fact issues"), citing Shamblin v. Beasley, 1998 OK 88, 967 P.2d 1200, 1207.

[39] West v. Cajun's Wharf, Inc., 1988 OK 92, n.2, 770 P.2d 558, 563.

[40] Cf. May--Li Barki, M.D., Inc. v. Liberty Bank & Trust, Co., 1999 OK 87, Â¶ 15, 20 P.3d 135, 140-141 (the exclusion of cumulative evidence does not constitute reversible error); Worsham v. Nix, 2006 OK 67, Â¶ 34-35, 145 P.3d 1055, 1066-1067 (opinion testimony of expert was unreliable).

[41] Middlebrook v. Imler, Tenny & Kugler M.D.'s, Inc., 1985 OK 66, 713 P.2d 572, 583, citing Short v. Jones, 1980 OK 87, 613 P.2d 452, 457, where we explained a trial court could exclude from trial a witness whose name was undisclosed prior to trial, and the opposing party had objected during pretrial to trial testimony from the then unnamed witness).

[42] 2017 OK 42, 396 P.3d 210.

[43] Andrew v. Depani-Sparkes, 2017 OK 42, Â¶ 35, 396 P.3d 210, 223.

[44] Andrew v. Depani-Sparkes, 2017 OK 42, Â¶ 35, 396 P.3d at 223.

[45] Andrew v. Depani-Sparkes, 2017 OK 42, Â¶ 38 & n. 54, 396 P.3d at 224, citing Tucker v. Cochran Firm--Criminal Defense Birmingham L.L.C., 2014 OK 112, n. 63, 341 P.3d 673, 688.

[46] Braitsch v. City of Tulsa, 2018 OK 100, Â¶ 6, 436 P.3d 14, 18.

[47] In re Adoption of K.P.M.A., 2014 OK 85, Â¶ 12, n. 3, 341 P.3d 38, 42-43, citing Pierce v. State ex rel. Dept. of Public Safety, 2014 OK 37, Â¶ 7, 327 P.3d 530; In re A.M. & R.W., 2000 OK 82, Â¶ 6, 13 P.3d 484, 486-487.

[48] Patterson v. Beall, 2000 OK 92, Â¶ 1 & n.1, 19 P.3d 839, 841.

[49] Public Serv. Co. v. Brown, 1998 OK 121, Â¶ 7, 972 P.2d 354, 355, quoting Montgomery v. Murray, 1970 OK 226, 481 P.2d 755, 761, quoting Badgwell v. Lair, 1958 OK 122, 325 P.2d 968, 971.

[50] Beshara v. Southern National Bank, 1996 OK 90, 928 P.2d 280, 290.