**W. M. YOUNG, Jr., Plaintiff in Error,**

v.

**Reeford DARTER, Defendant in Error.**

No. 38784.

Supreme Court of Oklahoma.

June 6, 1961.

Rehearing Denied July 25, 1961.

Walter Hubbell, Walters, for plaintiff in error.

Funston Flanagan, Walters, for defendant in error.

WILLIAMS, Chief Justice.

Plaintiff below, defendant in error here, Darter, seeks to recover damages from Young, defendant below, plaintiff in error here. The parties will be referred to herein as they appeared in the trial court.

In 1957, in order to kill weeds growing therein, defendant caused his pasture lying immediately to the south and west of plaintiff's thirty acre field of cotton to be spray-

ed with 2–4D poison. Such poison allegedly drifted and spread across such cotton, damaging it. Plaintiff alleged defendant was guilty of negligence.

He further alleged diminution of amount of lint produced and decrease in its value as a result of his cotton having been so poisoned.

Judgment was entered on jury verdict against defendant for $1,351.80 and appeal perfected.

Defendant under his "Proposition One" first argues that plaintiff's evidence wholly failed to prove that defendant caused the spray to drift and blow over plaintiff's cotton crop and that there is no proof of lack of ordinary care by the defendant in his spraying operation. We do not agree.

The defendant himself did not actually do the spraying, but testified that it was done with his permission and consent.

Donald Young (defendant's brother) testified that he did the spraying, using a mixture of 2–4D poison and water; that he did not know it would damage cotton or that the spray would drift; that he stopped spraying before he got close to the cotton because he did not know whether it would hurt the cotton or not; that he thought if he sprayed the mixture on the cotton it might kill it; that at the time he did the spraying there was a little breeze out of the south; that there could have been quite a bit out of the southwest.

An inspector in the entomology division of the State Board of Agriculture testified that he had some experience and training with 2–4D; that he was familiar with the reaction of a plant to 2–4D; that the mixture used as a spray would drift and the distance depended upon the wind; that one should know the wind currents when he used it and should not use it when there is any possibility for it to drift and get on any other broad leaf plant; that it has a detrimental effect on cotton; that he examined plaintiff's field of cotton one or two months after the spraying; that, in his opinion, the cotton had been damaged by 2–4D or 2–45T.

We determine the evidence to have been sufficient to warrant the verdict in the light of the following discussion as to our view of applicable principles of law.

The case of Miles v. A. Arena & Co., 23 Cal.App.2d 680, 73 P.2d 1260, 1262, was an appeal from the judgment of the trial court awarding plaintiff damages for the wrongful killing of fifty-six hives of bees resulting from permitting dust, which was spread by means of an airplane on honeydew melons, to drift to such hives. Therein the court said:

"We have been cited to no case involving the recovery of damages for the death of bees caused by a poisonous dust floating from a field where vegetables were being dusted to the apiary. It must be conceded that, in itself, dusting vegetables to kill pests that prey upon them is a necessary and lawful operation which the owner of the vegetables may perform, either himself or through his servants, or may have performed by an independent contractor. However, he should not do the dusting, or have it done, under conditions which would indicate to a reasonably prudent person that damage to his neighbor would result.

"While we have found no case involving operations factually similar to those before us, we can see no reason why the same rule should not apply here as governs in cases where damage to a plaintiff's property has resulted from drifting smoke, dust, noxious gases or similar substances originating on a defendant's property. No person is permitted by law to use his property in such a manner that damage to his neighbor is a foreseeable result. See Restatement of the Law, Torts, § 364 et seq. * * *

"Defendants knew, or should have known, that the light dust projected under pressure onto the melons would float in the air. There is evidence that a light breeze was blowing during the dusting operations. They should have

known that the dust would float for a considerable distance when propelled by such a breeze. Dusting material containing a poison that would kill bees was used. Under the conditions prevailing at the time they should have foreseen the ensuing damage to plaintiff. It follows that they must respond in damages."

In the case of Luthringer v. Moore, Cal. App., 181 P.2d 89, 95, the Court said:

"The imposing of liability in the absence of international (sic) injury or negligence is not uncommon in Anglo-American jurisprudence, either as a development in the common law or by legislative enactment. Many examples might be cited. Unintentional trespass upon land, libel, and keeping of dangerous animals, are but a few. Implied warranty, especially in the sale of foods, and the objective theory of contracts fall within the same category. In the field of legislation, Workmen's Compensation Acts, and statutes making owners of automobiles liable for damage resulting from another's use thereof are classic illustrations.

"The concept of liability without fault in tort actions is one of social and economic expediency and has its origin in the fundamental aim of shifting a loss from one upon whom it has fallen to another whose acts have been the proximate cause of a foreseeable risk. Obviously the application of the rule is to be confined within reasonable limits. Thus the injury for which a recovery is allowed must have been the proximate result of the activity in its ultra-hazardous nature, and the risk must have been one which was foreseeable. An activity carried on in one place reasonably may be considered as ultra-hazardous while the same acts done elsewhere may not be such."

In the case of Berry v. Shell Petroleum Co., 140 Kan. 94, 33 P.2d 953, 957, affirmed on rehearing 141 Kan. 6, 40 P.2d 359, defendant oil company connected its salt water pipe line with the city sewer system which emptied into a drainage canal. The salt water seeped into plaintiff's land adjoining the canal, polluting his water supply. Plaintiff did not allege negligence. The court said:

"The fact that the business of the refinery is in itself a lawful one, and that the owner of it operates it carefully will not exempt him from liability * * *

"It must be remembered that negligence is not a necessary element of the right of recovery in a case like this. The right to recover results from the company having the harmful substance on its land and permitting it to escape to the damage of plaintiff."

■ Spraying poison on weeds growing upon one's own land is a lawful operation, and, when done in a manner not hazardous to rights of another, is not a nuisance per se. Under proper conditions, the spraying would cause no invasion of the adjacent lands.

■ Here, however, we have a situation to which the doctrine, "One must so use his own rights as not to infringe upon the rights of another", may be applied in its broad and fundamental import.

In Seismograph Service Corporation v. Buchanan, Okl., 316 P.2d 185, 187, we said (appropriately for repetition here, we believe);

"The time honored maxim * * * —so use your own property that you do not injure that of another—has often been quoted by the courts to express succinctly their resolution of the problems created by the conflicting interests of adjoining landowners."

■ When one, in an operation lawful and proper in itself, but cognizant of existing conditions and with knowledge that injury may result to another, does an act with the result flowing therefrom that damage is done to the other as the direct and proximate consequence of the act, the one who does the act and causes the injury

should be required to compensate the other for the damage done.

In 2 C.J.S. Adjoining Landowners § 46, p. 41, is the following:

"In accordance with the rule that the mutual and reciprocal duties of adjoining landowners require that each use his land in a reasonable manner with due regard for the rights and interests of others, * * * one proprietor may not engage in actual wrongdoing which will inflict on his adjoining neighbor any injury which can be reasonably avoided; nor has he the right so to use his land as to render that of his neighbor in any degree useless, and if he uses it in an unreasonable, unusual or unnatural manner, although the use in itself is lawful, he may be liable for the injury to adjoining property caused thereby."

Herbicides are defined by 2 O.S.1955 Supp. § 3–61 paragraph (f):

"The term 'herbicide' means any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any weed, or for defoliating plants, preventing fruit drop and inhibiting sprouting."

Our legislature has recognized that applying herbicides may be hazardous, and that they may drift to plants on other properties.

Certain of our statutes provide as follows:

2 O.S.1959 Supp. § 3–81—

"No person, firm or corporation shall engage in the business of applying to any lands or real property for hire or compensation in this state any pesticide, hereby defined to include insecticides, herbicides, fungicides and defoliants, except in accordance with the provisions of this subarticle * * *."

2 O.S.1955 Supp. § 3–82:

"Any person, firm or corporation as defined herein who uses or applies any pesticide on any lands in this State shall first obtain a permit therefor from the State Board of Agriculture * * *."

2 O.S.1959 Supp. § 3–85:

"* * * and no permit shall be issued until the applicant has executed and filed with the Board a corporate surety bond guaranteeing that the applicant will answer in damages to any person injured by pesticide application or drift to plants, animals, or property * * *."

These statutes are not asserted here as affording the basis for any relief to either of the parties to this situation between private citizens as distinguished from those in a public business, which situation arose prior to the enactment of such statutes. However, they do, we believe, reflect that the promiscuous spraying of poisonous substances in a manner calculated to endanger the rights of one's neighbors is an activity not commonly regarded as consonant with the principles of natural and common justice.

The facts of the instant case bring it within the rule of Rylands v. Fletcher (1868) L.R., 3 H.L. 330.

"If a person brings or accumulates on his land anything which, if it should escape, may cause damage to his neighbor, he does so at his peril. If it does escape, and cause damage, he is responsible, however careful he may have been, and whatever precautions he may have taken to prevent the damages."

It may be that the defendant could excuse himself by showing that the escape was owing to the plaintiff's default; or perhaps that the escape was the consequence vis major or the Act of God; but as nothing of this sort was shown here, it is unnecessary to inquire what excuse would be sufficient. Rylands v. Fletcher, supra.

The use, by the defendant, of a poison on his land, which, if it escaped, would cause damage to plaintiff, was done at defendant's peril. He is responsible for its drifting and thereby trespassing on plaintiff's land where it damaged the cotton. Any precautions defendant's agent may

have taken to prevent the injuries to plaintiff's cotton, in view of the results, do not serve to extinguish his liability. The question in general is not whether defendant acted with due care and caution, but whether his acts occasioned the damage.

Defendant next complains of the failure of plaintiff to prove (and make deductions for) cost of proper cultivation of the crop to maturity, spraying for insects, and the amount received from the sale of cotton seed over and above the cost of ginning (such deductions being), necessary to establish the value of the unmatured crop at the time of the injury.

■ The evidence was that no additional work or expense was required because of the damage to the cotton. The proof defendant contends should have been made is required when there is a total destruction of a crop and one is relieved thereby of further work and expense in connection with the crop. Burke v. Thomas, Okl., 313 P.2d 1082.

Under his "Proposition Two" defendant first argues that the court erred in submitting to the jury instruction No. 3.

Defendant contends that this instruction shifts the burden of proof to him in that he has to prove by a preponderance of the evidence that he was not guilty of negligence.

In view of our holding that defendant is liable for the damage to plaintiff's cotton, regardless of negligence, we believe that it was not necessary for the trial court to give its instruction No. 3 as to the alleged negligence of defendant. We note defendant argues that such instruction placed the burden upon him of proving his want of negligence by a preponderance of the evidence. However, careful consideration of such instruction reveals that the plaintiff was to be awarded a verdict only if the jury made one certain finding (defendant guilty of negligently causing plaintiff damages in a certain amount), whereas defendant was to receive the verdict if the jury failed to make such finding or if it found defendant had shown himself not guilty of negligence.

■ For the reasons that we are holding that the evidence was sufficient to warrant the jury in finding defendant liable under the principles herein enunciated without the requirement that defendant be found guilty of negligence, that the giving of such instruction though it was not perfectly drawn, did not prejudice defendant's rights and that no other instruction in lieu thereof was requested by defendant, we decline to hold that the giving thereof is a sufficient ground of error to warrant reversal of the trial court's judgment based upon the verdict rendered pursuant to the instructions including that one.

Defendant's second complaint under his "Proposition Two" is that:

"The court erred in submitting to the jury Instruction No. 4, embodying an instruction on the measure of damages, as follows:

"'* * * you are instructed that the measure of damages for any injury to growing crops is the difference between the value of said crops at the time of the injury and the value of the same immediately thereafter, less the cost of cultivating, harvesting and delivery of said crop to market * * *.'"

Defendant cites no authorities, but argues:

"The language used by the court as quoted, sets out only the basis of a proper instruction measuring damages to growing crops. The court should have gone further and properly instructed the jury how to arrive at said damage, as set out in the approved instruction hereinabove quoted.

"We believe the instruction confused the jury and that the giving thereof was error."

Plaintiff's evidence was to the effect that he had been damaged in the amount of $2,660.99. The jury allowed him $1,351.50.

The defendant's complaint is not that instruction No. 4 is incorrect, but that it did not go far enough—was not specific.

In Sanders v. C. P. Carter Const. Co., 206 Okl. 484, 244 P.2d 822, 826, we said:

"* * * If plaintiff desired more specific instructions as to any issue involved it was his duty to request such instructions."

We think that the instruction sufficiently stated the measure of damages, especially in view of the fact that defendant requested no more specific instruction on the subject.

Defendant's third and fourth arguments are:

"Third: In view of the fact that plaintiff produced more cotton per acre than his neighbor, Simmons, and had practically the same yield per acre as his neighbor, Bowles, we seriously doubt that he sustained damage in excess of $300.00 from all sources combined, including rain, hail, spray and the early freeze. And

"Fourth: In view of failure of proof of negligence or damages, the judgment is not supported by the evidence and is contrary to the law and the evidence."

We do not agree.

No authorities, arguments or portions of the testimony are set out in the brief in support thereof.

From our examination of the entire record we conclude that there is some evidence reasonably tending to support the verdict. The jury determined the defendant was liable. In Stout v. Cargill, Inc., Okl., 355 P.2d 1067, this was said in the syllabus:

"The jury are the triers of the facts and the sole and exclusive judges of the evidence and the credibility of the witnesses, and, where there is evidence tending to support the findings of the jury, same will not be disturbed on appeal."

Judgment affirmed.

DAVISON, HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.

BLACKBIRD, V. C. J., concurs in result.

BERRY, J., dissents.