2004 OK CIV APP 28

**Linda DAVIS, Plaintiff/Appellant,**

**v.**

**The CITY OF TULSA—Rogers County Port Authority, Defendant/Appellee.**

**No. 99,075.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Feb. 24, 2004.

Gerald J. Lovoi, Tulsa, OK, for Plaintiff/Appellant.

Steven J. Adams, Todd R. Waddell, Fellers, Snider, Blankenship, Bailey & Tippens, P.C., Tulsa, OK, for Defendant/Appellee.

Opinion by BAY MITCHELL, Presiding Judge.

¶1 Plaintiff/Appellant Linda Davis (Davis) filed an action against Defendant/Appellee The City of Tulsa–Rogers County Port Authority (Port Authority) after being exposed to a release of arsine gas that originated at

Tulsa's Port of Catoosa.[1] Davis alleges Port Authority is liable under public and private nuisance law for maintaining a hazardous condition. She further asserts Port Authority was negligent and is strictly liable for failing to protect her from the harm she suffered as a result of the arsine gas release. Port Authority defended, asserting Davis's public and private nuisance claims fail under Oklahoma landlord/tenant law and her remaining causes of action are barred by Oklahoma's Governmental Tort Claims Act (GTCA). The trial court granted Port Authority's motion for summary judgment. We affirm.[2]

¶2 On appeal, Davis's sole proposition is whether it was proper for the trial court to hold her claims barred by the GTCA despite language in 82 O.S.2001 § 1102(a) stating "[t]he exercise by such port authority of the powers conferred upon it shall be deemed to be essential governmental functions of the State of Oklahoma, but no port authority shall be immune from liability by reason thereof."

¶3 We will affirm the trial court's grant of summary judgment if no genuine controversy exists as to any material fact and the movant is entitled to judgment as a matter of law. 12 O.S.2001, Ch. 2, App.1, Rule 13. If a legitimate dispute does exist as to a material fact, however, or if reasonable minds could draw different conclusions from the undisputed facts, summary judgment is not appropriate. *Brown v. Prudential Properties of Oklahoma,* 1999 OK 7, ¶7, 976 P.2d 1043, 1045. In evaluating the trial court's grant of summary judgment on appeal, we must view the evidence in the light most favorable to the nonmovant. *Vance v. Fed. Nat'l Mtg. Ass'n,* 1999 OK 73, ¶6, 988 P.2d 1275, 1278.

¶4 Port Authority manages a 2,000 acre industrial complex at the Port of Catoosa.

1. Along with Port Authority, Davis named Solkatronic Chemical, Inc.; Jarrad Garrison (site manager for Solkatronic); Jeff R. Harris (health, safety, and environmental manager for Solkatronic); Jane Doe (the Solkatronic employee who released the gas); and Air Products and Chemicals, Inc. as defendants in this action. Although the trial court's award of summary judgment relates solely to Davis's claims against Port Authority, this is an appealable order because the trial court made an express finding pursuant to

12 O.S.2001 § 994 that there is no just reason for delay.

2. This appeal from the trial court's decision sustaining Appellee's motion for summary judgment is submitted without appellate briefs in conformance with the procedures for the appellate accelerated docket, Okla. Sup.Ct. R. 1.36, 12 O.S. 2001, Ch 15, App.

In 1996, Port Authority leased certain real property at that location to Solkatronic Chemical, Incorporated for the purpose of constructing a facility to produce, package, and distribute industrial chemicals and gases. On July 11, 2001, a Solkatronic employee failed to bleed a tank of arsine, causing the valve to blow and the gas to release into the air. Arsine, a gas manufactured by Solkatronic for use in the semiconductor industry, is a priority pollutant as defined by the Environmental Protection Agency (EPA) that is very harmful to humans. Given the prevailing weather conditions, the gas cloud traveled north after its initial release. Davis was driving on a highway just north of the port at the time, and proceeded to spend an hour out-of-doors consulting with a client in open air that was, unbeknownst to Davis, contaminated with the arsine gas. Several hours later, Davis suffered lung irritation, headaches, diarrhea, vomiting, and pain in her legs and back and was transported to St. Francis hospital. She claims to remain in need of medical attention and/or monitoring as a result of her arsine exposure.

¶ 5 At some point after the release—too long afterward, Davis argues—Port Authority closed and secured the Port of Catoosa, preventing all persons except medical and emergency personnel from entering. Davis argues Port Authority knew or should have known the release of arsine gas posed an unreasonable risk to humans who might come into contact with it but failed to adequately warn or evacuate people in the affected areas, including those outside the port. She further alleges Port Authority was under a duty to inspect and monitor the safety risks at the Port of Catoosa but failed to do so.

¶ 6 The common-law doctrine of sovereign immunity was abrogated in 1983 by the Supreme Court's decision in *Vanderpool v. State of Oklahoma ex rel. Oklahoma Historical Society*, 1983 OK 82, ¶ 19, 672 P.2d 1153, 1156–57. The Legislature responded by adopting the GTCA the following year, which codified sovereign immunity for the state, its political subdivisions, and their employees

acting within the scope of employment. 51 O.S.2001 § 152.1(A).[3]

¶ 7 Port Authority is an agency of the State of Oklahoma. 82 O.S.2001 § 1102(a) ("There is hereby established in each incorporated city and town and in each county of the state a public body corporate and politic *which shall be an agency of the state of Oklahoma* and shall be known as the 'port authority' of the city or town or of the county") (emphasis added). Under section 152 of the GTCA, state agencies are among the political subdivisions subject to the protections of the GTCA. 51 O.S.2001 § 152(10).

¶ 8 Davis argues her tort actions against Port Authority are not barred by the GTCA because The Port Authorities Act, 82 O.S. 2001 §§ 1001 *et seq.* states "[t]he exercise by such port authority of the powers conferred upon it shall be deemed to be essential governmental functions of the State of Oklahoma, but no port authority shall be immune from liability by reason thereof." 82 O.S. 2001 § 1102(a). When the Legislature promulgated the Port Authorities Act in 1959, and last amended it in 1963, the common-law doctrine of sovereign immunity remained in force.

¶ 9 In deciding whether the GTCA supersedes the Port Authorities Act on the issue of immunity from liability, we will not presume "the legislature, in the enactment of a subsequent statute, intended to repeal an earlier one, *unless it has done so in express terms*," *Mustain v. Grand River Dam Authority*, 2003 OK 43, ¶ 23, 68 P.3d 991, 999 (emphasis in original). In enacting the GTCA,

> [t]he legislature could not have been clearer in expressing its intent that the GTCA form the sole, comprehensive plan for compensating those injured in their person or property by tortious acts of the state, a political subdivision, or of their employees. Section 153 of the Act expressly provides that liability *"shall be exclusive and in place of all other liability of the state, a political subdivision or employee at com-*

---

**3.** In 1978, the legislature enacted an earlier version of GTCA, entitled the Political Subdivision Tort Claims Act.

*mon law or otherwise.*" Its Section 170 mandates *"[t]his act is exclusive and supersedes all home rule charter provisions and special laws on the same subject, heretofore, and all acts or parts of acts in conflict herewith are repealed.*

*Mustain v. Grand River Dam Authority,* 2003 OK 43, ¶ 24, 68 P.3d 991, 999–1000 (emphasis in original) (holding statute authorizing tort actions against dam authority, enacted prior to GTCA, was superseded by GTCA). The same reasoning applies here. The trial court properly held the GTCA overrides 82 O.S.2001 § 1102(a) to the extent the earlier statute authorized tort actions against Port Authority.

¶ 10 Accordingly, Port Authority's sovereign immunity is waived only to the extent and in the manner provided by the GTCA, with the Act providing the exclusive remedy for tort actions against it. *See Fuller v. Odom,* 1987 OK 64, ¶ 4, 741 P.2d 449, 452. Section 155 of the GTCA enumerates thirty-two exemptions from liability. Port Authority contends several of these exemptions apply, immunizing it from Davis's negligence allegations.

■ ¶ 11 Under § 155(4) of the GTCA, Port Authority shall not be liable for losses or claims resulting from "[a]doption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." Pursuant to this exemption, Davis's negligence claims are barred with respect to Port Authority's alleged failure to (1) comply with state or federal laws associated with the production of arsine gas; (2) ensure Solkatronic complied with such applicable rules and regulations; (3) develop or timely enforce an evacuation plan; and (4) develop or timely employ a policy to warn potential victims in affected areas.

■ ¶ 12 Section 155(13) provides state agencies shall not be liable if a loss or claim results from:

Inspection powers or functions, including failure to make an inspection, review or approval, or making an inadequate or negligent inspection, review or approval of any property, real or personal, to determine whether the property complies with or violates any law or contains a hazard to health or safety, or fails to conform to a recognized standard.

Under this provision, Port Authority is immune from liability for failing to inspect, review, or approve, or for negligently inspecting, reviewing, or approving Solkatronic's facility to determine if its use complied with applicable health and safety laws and regulations, or whether it was otherwise hazardous.

■■ ¶ 13 Davis further asserts that, given the extremely hazardous nature of arsine gas, Port Authority is strictly liable for its release. Under Oklahoma law, a party conducting an ultrahazardous activity is liable for damages regardless of fault. *Wetsel v. Indep. Sch. Dist. I–1,* 1983 OK 85, ¶ 7, 670 P.2d 986, 990. The Restatement (Second) of Torts (1977) explains:

§ 519. General Principle

(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.[4]

It follows that, in order to be subject to strict liability in tort under this theory, a defendant must be one who "carries on" an activity that is "abnormally dangerous." Given that it was Solkatronic who manufactured the arsine gas, and Davis's allegation it was a Solkatronic employee who mishandled the tank and caused the arsine release, and given that it happened on Solkatronic's premises which Davis concedes Solkatronic had exclusive use and control over, we fail to see how Port Authority can possibly be classified as the entity who carried on an abnormally dangerous activity in this case. Regarding this, we find no material factual dispute. According-

---

4. This Court cited with approval RESTATEMENT (SECOND) OF TORTS §§ 519, 520 (1977) in *Taylor v.* *Hesser,* 1998 OK CIV APP 151, ¶ 18, 991 P.2d 35, 39.

ly, Davis's strict liability claim against Port Authority must fail.

¶ 14 For these reasons, we AFFIRM the trial court's grant of summary judgment to Port Authority.

¶ 15 AFFIRMED.

HANSEN, J., and JOPLIN, J., concur.