HAYES v. NORTHEAST OKLAHOMA ELECTRIC COOPERATIVE
2022 OK CIV APP 20
Case Number: 118868
Decided: 07/23/2021
Mandate Issued: 06/02/2022
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2022 OK CIV APP 20, __ P.3d __

 

MACK COY HAYES, OKEOZARK WINE, LLC, an Oklahoma Limited Liability Company, ROY DALE KELLY, and DAN J. CAGLE and VIRGINIA KAREN FAUDI, Co-Trustees of the JOHN WILLIAM CAGLE AND MAXINE CAGLE REVOCABLE TRUST DATED APRIL 19, 2005, Plaintiffs/Appellants,
v.
NORTHEAST OKLAHOMA ELECTRIC COOPERATIVE, INC., and NORTHEAST RURAL SERVICES, INC., Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
MAYES COUNTY, OKLAHOMA

HONORABLE SHAWN TAYLOR, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED FOR A NEW TRIAL

Johnny G. Beech, Courtney D. Powell, Oklahoma City, Oklahoma, Charles B. Cowherd, Derek A. Ankrom, SPENCER FANE LLP, Springfield, Missouri, for Plaintiffs/Appellants,

Richard E. Hornbeck, Lane M. Claussen, HORNBECK VITALI & BRAUN, P.L.L.C., Oklahoma City, Oklahoma, for Defendants/Appellees.

THOMAS E. PRINCE, JUDGE:

¶1 This case concerns alleged damages to trees, vines, hay and crops. Plaintiffs/Appellants, Mack Coy Hayes, OkeOzark Wine, LLC, Roy Dale Kelly, and Co-Trustees of the Cagle Revocable Trust ("Plaintiffs"), appeal judgments rendered in favor of Defendants/Appellees, Northeast Oklahoma Electric Cooperative, Inc. and Northeast Rural Services, Inc. ("Defendants" or "NEOEC" and "NRS"). Plaintiffs alleged that their property was damaged and profits were lost as a result of Defendants' trespassing and negligence. NEOEC is a not-for-profit cooperative and NRS is a subsidiary of NEOEC. In order to protect their equipment, Defendants must cut, trim, or use pesticides to kill trees and brush that could damage their power lines. During September of 2014, Defendants sprayed herbicide on or near Plaintiffs' land in order to maintain their power line rights of way. Plaintiffs averred that when Defendants sprayed the herbicide, they did so negligently and allowed the herbicide to drift onto Plaintiffs' property. Plaintiffs further alleged that their property was damaged or destroyed as a proximate cause of Defendants' actions.

¶2 Prior to trial, the trial court granted summary judgment in favor of NRS. During trial, the trial court granted a directed verdict dismissing OkeOzark's claim for damages. After approximately twelve days of trial, a jury rendered a verdict in favor of NEOEC. Plaintiffs filed a motion for new trial which was denied. Defendants were awarded attorney's fees and costs in the amount of $375,192.25. We find that the trial court committed error by admitting into evidence the ODA Reports that constituted inadmissible hearsay. As a result, we reverse the decision granting summary judgment to NRS. We affirm the directed verdict against OkeOzark. We vacate the jury verdict in favor of NEOEC, and we vacate the award of attorney fees and costs in the amount of $375,192.25. Regarding the jury instructions, we find that it was error for the trial court to refuse to provide a separate verdict form on the theory of ultrahazardous or abnormal activity, but not error to refuse a verdict form with respect to wrongful injury to timber or to instruct on the theory of res ipsa loquitur. The matter is remanded to the trial court for a new trial.

BACKGROUND

¶3 On September 3, 5, 9, and 10, 2014, Tyson Hessee, an employee of NEOEC, sprayed chemicals in an area adjacent to Plaintiffs' property in order to maintain Defendants' power line rights of way. The chemicals applied by Mr. Hessee were a mixture of Tordon K, Garlon 3 A, and Milestone. The active ingredients that could have damaged Plaintiffs' property were picloram and triclopyr. Plaintiffs own a total of approximately 230 acres of land. Mack Coy Hayes owns approximately 160 acres and leased another 50 acres from the Cagle Trust. On that land Mr. Hayes had an orchard and a vineyard that covered approximately 15 acres. Other land in his possession was utilized for hay and pasture land. During September of 2014, Mr. Hayes noticed a change in his vineyard. After discovering that the electric cooperative applied chemicals nearby, Mr. Hayes called NEOEC on September 10, 2014, to complain. On September 12, 2014, Mr. Hayes made a complaint to the Oklahoma Department of Agriculture ("ODA"). The Department of Agriculture investigated the complaint and collected samples from Mr. Hayes's property on September 16, 2014.

¶4 Mr. Hayes initially filed a lawsuit in federal court during October of 2014, but he dismissed that lawsuit approximately two weeks later. The Cagle Trust and Roy Dale Kelly subsequently made complaints to the ODA and the ODA collected samples from their land during November or December of 2014.

¶5 Plaintiffs filed the instant action on August 24, 2016. In their Petition, Plaintiffs claimed that Defendants did not apply the chemicals properly and, as a result, the chemicals drifted onto Plaintiffs' land and destroyed their property. Plaintiffs alleged that they lost trees, vines, hay and crops as a direct result of Defendants' negligent behavior and trespass. Hayes asserted that his entire vineyard had to be replaced as a result of Defendants' actions.

¶6 On September 20, 2017, NRS filed a Motion for Summary Judgment and claimed that it owed no duty to Plaintiffs and, therefore, that NRS arguably should be awarded summary judgment. NRS claimed that it was not involved with the application of chemicals to the rights of way near Plaintiffs' property during September of 2014. NRS alleged that Tyson Hessee was an employee of NEOEC. According to NRS, NEOEC performed its own herbicide applications during 2014. As a result, NRS argued that it should be granted summary judgment as a matter of law.

¶7 Plaintiffs responded and alleged that NRS is a subsidiary of NEOEC. NRS had a contract with NEOEC, which provided that NRS agreed to "furnish all labor, tools, transportation, and equipment necessary" to conduct foliar applications during 2014. In addition, all of the herbicide application equipment used in the spraying incident was owned, maintained, and stored by NRS. Mr. Hessee completed his "Job Briefing Check List" on NRS forms and letterhead. Mr. Hessee was under direction to report to NRS in the event of a problem or emergency. Mr. Hessee's safety director was an employee of both NEOEC and NRS. Plaintiffs alleged that there was substantial evidence of a joint venture between NEOEC and NRS and that, at a minimum, there was a genuine issue of fact as to whether NRS was involved in a joint venture. The trial court granted summary judgment in favor of NRS.

¶8 Prior to trial, Plaintiffs filed a motion in limine seeking to exclude from evidence the results of laboratory tests conducted by the ODA (i.e., labeled as "Pesticide Analysis Report[s]" by the "Oklahoma Department of Agriculture, Food & Forestry." R. at 1746-1758. ("ODA Reports"). The samples collected by the Department of Agriculture from Plaintiffs' property during 2014, were tested and the test results indicated that there were no chemicals present on Plaintiffs' property. Defendants' Ex.'s D7-39, D7-41, D7-43, D7-45, D48-21 & D49-24. The ODA Reports specifically concluded that "no residue [had been] detected". Consequently the ODA reports refuted the claims of the Appellants that herbicides applied by the Defendants damaged their properties.

¶9 Defendants claimed that the ODA Reports were self-authenticating under 12 O.S. §2901

¶10 Mr. Moser passed away before trial commenced. The trial court ruled that the ODA Reports could be admitted into evidence as long as Tanna Hartington, Mr. Moser's replacement, would testify that the ODA Reports were a "business record of the Department of Agriculture." September 16, 2019 Tr. at 358-360 & 417-420. Appellants argue on appeal that it was error for the trial court to admit the ODA Reports into evidence because they constitute hearsay.

¶11 After presentation of all of the evidence, Defendants sought a directed verdict against OkeOzark Winery. OkeOzark was a winery owned by Mack Coy Hayes's girlfriend, Ausline Palmer. The winery did not have any ownership interest in the vineyard located on Mr. Hayes's land. However, Ms. Palmer testified that OkeOzark lost profits in the amount of $50,000.00 as a result of the damage to the vineyard. The trial court stated:

There is a matter of housekeeping that I've addressed in chambers in regard to the demurrer to the evidence in regard to OkeOzark Winery. The Court has determined that that should be granted. My grounds for that were I determined that it would be a double recovery in regard to my understanding that OkeOzark is the winery and that the grapes that would be provided that might be damages would be those that Mack Hayes already has a claim in this case for.

¶12 The jury entered a verdict in favor of NEOEC. Plaintiffs filed a motion for new trial, which was denied by the trial court. The trial court awarded Defendants attorney fees and costs in the amount of $375,192.25. This appeal followed.

STANDARD OF REVIEW

¶13 This appeal involves issues stemming from the grant of summary judgment, a directed verdict, the admission of evidence purportedly as being excepted from the hearsay rule, both the issuance of and the refusal of certain jury instructions, a motion for new trial, and an award of attorney fees and costs. A trial court's grant of summary judgment is reviewed de novo. In Re Estate of MacFarline, 2000 OK 8714 P.3d 551Carmichael v. Beller, 1996 OK 48914 P.2d 1051De novo review requires an independent, non-deferential re-examination of another tribunal's record and findings.") Patterson v. Beall, 2000 OK 9219 P.3d 839

¶14 The standard of review for directed verdicts is very similar to the standard for summary judgments. Harder v. F.C. Clinton, Inc., 1997 OK 137948 P.2d 298de novo. Cities Service Co. v. Gulf Oil Corp., 1999 OK 14980 P.2d 116Estrada v. Port City Properties, Inc., 2007 OK CIV APP 23158 P.3d 495

¶15 A trial court's determination regarding admission or rejection of evidence under one of the hearsay exceptions will not be disturbed absent an abuse of discretion. Muratore v. State ex rel. Dept. of Public Safety, 2014 OK 3320 P.3d 1024Patel v. OMH Medical Center, Inc., 1999 OK 33987 P.2d 1185

¶16 Regarding jury instructions, in Chartney v. City of Choctaw, 2019 OK CIV APP 26441 P.3d 173

The test upon review of an instruction improperly given or refused is whether there is a probability that the jurors were misled and thereby reached a different result than they would have reached but for the error. Woodall v. Chandler Material Co., 1986 OK 4716 P.2d 65220 O.S. §3001.1See Messler v. Simmons Gun Specialties, Inc., 1984 OK 35687 P.2d 12112 O.S. §7812 O.S. §78See also Sunray DX Oil Co. v. Brown, 1970 OK 183477 P.2d 67

Id at 176. When reviewing assigned error in jury instructions, the Court must consider the instructions as a whole and determine whether the instructions reflect Oklahoma law on the relevant issue, not whether the instructions were perfect. Nealis v. Baird, 1999 OK 98996 P.2d 438res ipsa loquitur" is a question of law. Qualls v. U.S. Elevator Corp., 1993 OK 135863 P.2d 457

¶17 Abuse of discretion is the applicable standard of review when a trial court denies a motion for new trial. Jones, Givens, Gotcher & Bogan, P.C. v. Berger, 2002 OK 3146 P.3d 698Id at 701.

¶18 Defendants sought attorney fees and costs pursuant to 12 O.S. §928, §929, §940, §942, and 23 O.S. §72de novo. Hall v. Dearmon, 2015 OK CIV APP 40348 P.3d 1107Id at 1109. The trial court has no discretion in determining whether a particular type of cost set forth in 12 O.S. §942Atchley v.Hewes, 1998 OK CIV APP 143965 P.2d 1012

ANALYSIS

ODA Reports

¶19 The trial court allowed ODA Reports to be admitted into evidence over the Plaintiffs' continuing objection. It is undisputed that the ODA Reports were hearsay. Defendants claim that the results were admissible because 12 O.S. §280312 O.S. §280312 O.S. §2803

d. factual findings resulting from special investigation of a particular complaint, case or incident

Defendants argue that there was nothing "special" about the investigation conducted by the ODA since the ODA routinely investigates all complaints it receives. We disagree. The Oklahoma statute, 12 O.S. §280312 O.S. §2803

¶20 A similar hearsay issue was addressed by the Court of Appeals of Arkansas in McCorkle Farms, Inc. v. Thompson, 84 S.W.3d 884 (Ark. App. 2002), where a corporate cotton farmer sued a corporate rice farmer and crop duster for damages sustained when the cotton farmer's crop was allegedly exposed to pesticide applied to the rice farmer's nearby land. Id at 886. The cotton farmer reported symptoms of exposure to pesticides to the Arkansas State Plant Board. The Plant Board investigated complaints from the cotton farmer and others involving the same incident and held a hearing. The Plant Board concluded that there was not sufficient evidence to indicate that the rice farmer and the crop duster were responsible for damages. Id at 887. A jury returned a defense verdict. Id., at 886. On appeal, the cotton farmer claimed that the trial court erred in allowing the introduction of the conclusions of the Plant Board Pesticide Committee into evidence. Id at 888. The Arkansas Court pointed out that "[a]t common law, a judgment from another case would not be admitted . . ." into evidence and also stated that:

A practical reason for denying a judgment or administrative agency report evidentiary effect is the difficulty of weighing a judgment or report, considered as evidence, against whatever contrary evidence a party to the current suit might want to present. The difficulty must be especially great for a jury, which is apt to give exaggerated weight to an official finding of a state body.

Id at 888 (emphasis added). As in this case, the Defendants in McCorkle argued that since the Plant Board is an administrative agency authorized to conduct investigations, the investigation of the application of the pesticide is within the hearsay exception. Id. at 889. However, Arkansas, like Oklahoma, has statutory language providing that special investigations of particular complaints, cases, or incidents are not within the hearsay exception for public records. Id at 889. The Court in McCorkle provided the following illustration to demonstrate the basis for its holding that the report at issue there stemmed from a "special investigation" and was not within the hearsay exception for a "regularly conducted and . . . recorded . . ." activity of a public office:

This distinction may be illustrated by the example of a public agency charged with monitoring water quality in the state's rivers. If the agency, in fulfillment of its routine duties, tests the water in a flooding river (i.e., resulting from a particular incident, namely, the flood), the factual findings of those tests would be admissible in a civil trial as within the public records or reports exception to the hearsay rule. If, however, the agency conducts an investigation in response to a complaint that someone is dumping material into a river, the factual results of that investigative report would be inadmissible pursuant to Rule 803(8)(iv). (citation omitted).

Id. at 889 (emphasis added). Therefore, the conclusions reached by the Plant Board were found in McCorkle to be inadmissible.

¶21 Defendant relies on three cases for the proposition that the ODA reports were admissible as an exception to the hearsay rule pursuant to 12 O.S. §2803Hadley v. Ross, 1944 OK 366154 P.2d 939Id at 942-943. Hadley was decided prior to the passage of the current statute but the result reached by the Court would be the same today under 12 O.S. §2803

¶22 Clark v. State ex rel. Dept. of Public Safety, 2007 OK CIV APP 12153 P.3d 77Id at 78. The trial court allowed into evidence the "Log of Tests and Maintenance Record" for the breathalyzer used by the officer in administering the blood-alcohol test. Id at 79. The Court determined that the test log was admissible pursuant to 12 O.S. §2803Id at 82-83. Clark is distinguishable from the instant matter because it did not involve a special investigation as a result of a particular complaint and the officer who arrested Clark did testify at trial regarding his personal observations and reliance on the test log prior to administering the breathalyzer test. Id at 79.

¶23 In State ex rel. Fisher v. Heritage National Insurance Co., 2006 OK CIV APP 119146 P.3d 815Id at 818. The Court affirmed. The report was generated as a result of routine examinations of insurance companies as the Commissioner deems appropriate, but at least once every three years. Id at 818. The Court noted that the examiner's testimony was available and that neither party disputed the report's conclusion that MCA was overpaid. Id at 819. Finally, the Court stated that "even if this evidence was improperly admitted, we find no prejudice." Id at 819. The results contained in the ODA reports in this matter were hotly contested by the Plaintiffs and the ODA reports were generated solely as a result of particular complaints made by the Plaintiffs.

¶24 The complaints in this case that were made by Mack Coy Hayes, Roy Dale Kelly, and the Cagle Trust to the ODA were particular complaints. The investigations conducted by the ODA, in response to the complaints, were special investigations of particular complaints and, therefore, not excepted from the hearsay rule. The ODA reports were highly prejudicial to Plaintiffs' case because they purportedly indicated that there was no herbicide detected on Plaintiffs' property after Defendants sprayed their chemicals. The factual findings contained in the reports that were created as a result of those special investigations are not admissible pursuant to 12 O.S. §2803

Summary Judgment to NRS

¶25 The trial court granted the Motion for Summary Judgment filed by NRS. In the motion, NRS claimed that it did not apply the herbicides near Plaintiffs' land during September of 2014. Consequently, NRS asserted that it did not owe a duty to Plaintiffs since it was not involved with the spraying of herbicides. The following facts were undisputed by the parties:

1. NRS is a subsidiary of NEOEC.

2. A contract between NRS and NEOEC provided that NRS would "furnish all labor, tools, transportation, and equipment necessary" to conduct foliar applications during 2014.

3. All of the herbicide application equipment used in the spraying incident was owned, maintained, and stored by NRS.

4. Tyson Hessee, the herbicide applicator, completed his "Job Briefing Check List" on NRS forms and letterhead.

5. Mr. Hessee was under direction to report to NRS in the event of a problem or emergency and Mr. Hessee's safety director was an employee of both NEOEC and NRS.

NRS claimed that even though there was a contract for it to conduct foliar applications for NEOEC during 2014, it did not apply herbicides for NEOEC that year because of contractual obligations with other companies.

¶26 Summary judgment is appropriate when there are no material disputed factual questions and a party is entitled to a judgment as a matter of law. Prudential Insurance Co. v. Glass, 1998 OK 52959 P.2d 586Id at 588. If there are either controverted material facts, or if reasonable minds might reach different conclusions even if material facts are undisputed, summary judgment should be denied. Id at 588. In addition, all inferences and conclusions to be drawn from the evidentiary materials presented, must be viewed in a light most favorable to the nonmoving party. Boyle v. ASAP Energy, Inc., 2017 OK 82408 P.3d 183

¶27 The Court has reviewed the facts and evidentiary material presented by the parties. NRS and NEOEC are so closely-related that there exists, at the very least, a question of fact as to whether NRS could be liable to the Plaintiffs as a result of the application of herbicide on or near Plaintiffs' property. We hold that it was error for the trial court to grant summary judgment to NRS.

Instructions Given

¶28 Plaintiffs contend that jury instructions given by the trial court and proposed instructions not given were error. First, Plaintiffs claim that Instruction No. 14 misstated the law regarding the permissible use of express easements.

An easement is the right of one entity to go onto the land of another and make a limited use thereof. The owner of an easement may utilize the land upon which the easement exists, in such a manner that is necessary to carry out the intended purpose of the easement. If you find that Defendant had a valid easement to enter upon Plaintiffs' property then Defendant has the right to take action consistent with the intended purpose of the easement.

Plaintiffs argue that Instruction No. 14 was confusing, misleading, and misstated the law regarding the rights conveyed by an easement. Plaintiffs state that the trial court should have instructed the jury that the express language of an easement controls its scope.

¶29 In Logan County Conservation District v. Pleasant Oaks Homeowners Association, 2016 OK 65374 P.3d 755Id at ¶14. Although the trial court could have included language in the jury instruction stating that the plain language of the easement controls the intent of the parties to the easement, our review is limited to whether erroneous jury instructions probably resulted in a miscarriage of justice, not whether the instructions are perfect. Nealis v. Baird, 1999 OK 98996 P.2d 438

¶30 Next, Plaintiffs aver that Instruction No. 16 was improper because it misstated the law by failing to advise the jury that herbicide drift causing damage to property constituted trespass. Instruction No. 16 stated:

If herbicide used on a person's own land, or land the person has the right to be on, escapes and damages the land of another, it may constitute trespass.

Plaintiffs rely on Young v. Darter, 1961 OK 142363 P.2d 829

Instructions refused

¶31 Plaintiffs assert that it was error for the trial court to refuse to submit a separate verdict form to address the ultrahazardous activity issue. Instruction No. 29 stated:

Applying herbicide is an ultrahazardous activity. A person who engages in an ultrahazardous activity is responsible for all damage to property and injuries to persons that are directly caused by the activity.

The fact that this instruction was given to the jury shows that the trial court determined, as a matter of law, that "[a]pplying herbicide is an ultrahazardous activity".

¶32 The OUJI Committee Notes for OUJI 13.1, instruct as follows on how to treat an allegation of strict liability (based on an allegation of ultrahazardous activities):

The Committee recommends that the contents of this Instruction should be incorporated into the Instruction on the Issues in the Case (Instruction Nos. 2.1, 2.2, or 2.3) rather than given as a separate Instruction. Appropriate instructions for damages should also be given. See Instruction Nos. 4.1, 4.2. In addition, where causation is in issue, the appropriate instructions on causation should be given, but they should be modified by replacing references to negligence with references to the defendant's activities. See Instruction Nos. 9.6-9.8.

(emphasis added).

¶33 Separate verdict forms are required, however, when an action is tried to a jury on two or more separate causes of action. Quarles v. Panchal, 2011 OK 13250 P.3d 320See Davon Oil Co. v. Steele, 1940 OK 2798 P.2d 618LPCX Corp. v. Faulkner, 1991 OK 46818 P.2d 431

Where a cause consisting of two or more separate causes of action is tried to a jury separate verdict forms for each cause of action should be submitted to the jury. Stephens v. Draper, 350 P.2d 506Stakis v. Dimitroff, 154 Okl. 96 P.2d 1053

Id., at 440-441 (emphasis added). Cf., Okla. Const. Art. 7, §21 ("In all jury trials, the jury shall render a general verdict."); See also In re A.F.K., 2014 OK CIV APP 6317 P.3d 221

¶34 In a technical sense, a claim for relief of strict liability (based on an allegation of ultrahazardous activities) is not the same as a claim of negligence. The difference between a claim of strict liability claim (based on an allegation of ultrahazardous activities) and a claim of negligence is that fault is not a necessary element of recovery on a claim of strict liability. See Kirkland v. General Motors Corporation, 1974 OK 52521 P.2d 1353

'Negligence' is the failure to exercise ordinary care to avoid injury to another's person or property. 'Ordinary care' is the care which a reasonably careful person would use under the same or similar circumstances. The law does not say how a reasonably careful person would act under those circumstances. That is for you to decide. Thus, under the facts in evidence in this case, if a party failed to do something which a reasonably careful person would do, or did something which a reasonably careful person would not do, such party would be negligent.

(emphasis added). In Davis v. the City of Tulsa, 2004 OK CIV APP 2887 P.3d 1106Id at footnote 4. In Taylor v. Hesser, 1998 OK CIV APP 151991 P.2d 35Id at 36. The plaintiff there argued on appeal that the trial court erred in finding that paintball is not an ultrahazardous activity. The Court stated that a party conducting an ultrahazardous activity is liable for damages regardless of fault. Id at 39.

¶35 As shown by Instructions 29 & 30 here, the allegation that the Appellees engaged in ultrahazardous activities was instructed as a separate cause of action. It was, therefore, error for the trial court to refuse to provide a separate verdict form which would have allowed the jury to find Defendant strictly liable for engaging in an ultrahazardous activity. On remand, in the event Instructions 29 & 30 are given upon the re-trial of this matter, appropriate verdict forms regarding this claim must also be given.

¶36 Plaintiffs also argue that it was error for the trial court to fail to submit wrongful injury to timber as a theory of recovery separate from negligence and trespass. Plaintiffs rely on 23 O.S. §7223 O.S. §72Nealis v. Baird, 1999 OK 98996 P.2d 438

¶37 Plaintiffs claim that the failure of the trial court to instruct the jury regarding res ipsa loquitur constitutes error. Res Ipsa Loquitur is "essentially a rule of circumstantial evidence where a jury in a negligence case is permitted, but not required, to draw an inference of negligence from the happening of an accident of a kind which experience has shown does not normally occur if due care is exercised." Rogers v. Mercy Health Center, Inc., 2014 OK CIV APP 69334 P.3d 426res ipsa loquitur rule is to make out a prima facie case of negligence "in circumstances when direct proof of why the harm happened is beyond the power or knowledge of the plaintiff." Id at 432. The foundational facts necessary to establish a claim for res ipsa loquitur are: (1) the Plaintiffs sustained injury, (2) the injury was proximately caused by an instrumentality solely within the control of the defendant, and (3) such injury does not normally occur under the circumstances absent negligence on the part of the defendant. Id at 432. In this matter Plaintiffs did not establish the foundational fact that a vineyard and orchard would not be damaged in the absence of Defendant's negligence. Defendant did not have exclusive control over land owned by Plaintiffs and there was evidence presented indicating that Mr. Hayes also used herbicide on his land. There was evidence presented at trial of a myriad of intervening causes that could have resulted in damage to Plaintiffs' land. We hold that, as a matter of law, the trial court did not commit error when it refused to include an instruction to the jury regarding res ipsa loquitur.

Directed Verdict Against OkeOzark

¶38 The trial court granted a directed verdict against OkeOzark. OkeOzark is the winery that used grapes produced by Mr. Hayes. OkeOzark had no ownership interest in the vineyard owned by Mr. Hayes. The trial court determined that if the winery was awarded damages, then it would constitute a double recovery since Mr. Hayes already had a claim for damages as a result of the loss of the same grapes. In order to establish a claim for negligence, the defendant must owe a duty of care to the plaintiff and plaintiff must be injured as a direct result of defendant's failure to properly perform that duty. See Lowery v. Echostar Satellite Corp., 2007 OK 38160 P.3d 959

Attorney Fee Award

¶39 Prior to trial, NRS was granted summary judgment. On April 5, 2019, NRS filed an Application for Assessment of Fees and Costs Against Plaintiffs. In the application NRS sought an award of attorney fees and costs in the amount of $279,346.07. Plaintiffs responded on April 22, 2019, and claimed that the attorney fee application was premature and that it improperly sought an award of fees to NEOEC. NRS and NEOEC were represented by the same attorneys.

¶40 On November 19, 2019, Defendants, NEOEC and NRS, filed a combined Application for Assessment of Fees and Costs Against Plaintiffs and Brief in Support. Defendants sought the award pursuant to 12 O.S. §696.423 O.S. §72

¶41 On February 7, 2020, there was a hearing on Plaintiffs' Motion for New Trial and Defendants' Application for Attorney Fees and Costs. During the hearing the trial court stated:

We have an attorney -- application for attorney fees by Northeastern Oklahoma Electric Cooperative after the 12 days of jury trial and there was a defendants' verdict.

There was a previous attorney fee bill on behalf of another defendant, NRS, which was dismissed from the case. I can't remember if I did that or another judge did that, but we have the hearing, we have the testimony, and I've been advised by counsel that there's no reason to determine that because the attorney fee bill that's now pending includes any claim on behalf of NRS in regard to that.

The trial court held a hearing on the issue of attorney fees and costs and awarded Defendants attorney fees and costs in the amount of $375,192.25. We have reversed the order granting summary judgment NRS. We have also vacated the jury verdicts in favor of NEOEC. We, therefore, hold, that the award of attorney fees and costs should also be vacated because at this point in the litigation there is no prevailing party.

CONCLUSION

¶42 It was error for the trial court to admit the ODA reports into evidence and to grant summary judgment in favor of NRS. We reverse the award of summary judgment to NRS, we vacate the jury verdicts in favor of NEOEC, we vacate the award of attorney fees and costs in the amount of $375,192.25, and the matter is remanded for a new trial. It also was error for the trial court to refuse to provide a separate verdict form on the theory of ultrahazardous or abnormal activity, but not error to refuse a verdict form with respect to wrongful injury to timber or to instruct on the theory of res ipsa loquitur.

GOREE, P.J., and MITCHELL, J., concur.

FOOTNOTES

12 O.S. §280312 O.S. §2803

See also Swart v. Town and County Home Center, Inc., Ark. App. 619 S.W.2d 680 (holding that a written report by a compliance officer which was generated after an anonymous complaint was inadmissible hearsay.) Id at 683. See Janssen Pharmaceuticals, Inc. v. State, 432 S.W.3d 563 (Ark. 2014)(a "Warning Letter" stemming from an investigation was not part of routine record keeping and, consequently, it was inadmissible.) Id at 574. See Shexnayder v. Gish, 948 So.2d 1259 (La.App. 2 Cir. 2007)(holding that a trial court committed error when it admitted a letter into evidence that set forth factual findings in regard to a specific inquiry.) Id at 1265. In Kuhn v. Coldwell Banker Landmark, Inc., 245 P.3d 992 (Idaho 2010), the Supreme Court of Idaho held that if a special investigations report created for the Idaho real Estate Commission was not admissible, then testimony by a witness regarding the same would also be inadmissible. Id at 1004. In Crockett v. City of Billings, 761 P.2d 813 (Mont. 1988), the Supreme Court of Montana reviewed a statute that is identical to 12 O.S. §2803Id at 820. Finally, in Tiemann v. Santarelli Enterprises, Inc., 486 A.2d 126 (Me. 1984), the Supreme Judicial Court of Maine determined that the "Maine rule, unlike the federal rule, removes from the public records hearsay exception 'factual findings resulting from special investigation of a particular complaint, case or incident'" and, as a result, an investigative report prepared in response to a particular complaint was inadmissible hearsay. Id at 131.

See May v. May, 1979 OK 82596 P.2d 536("A party who does not take an appeal stands in a posture restricted to the defense of the relief granted below.").

See 12 O.S. §587

Davis v. the City of Tulsa, 2004 OK CIV APP 28

In determining whether an activity is abnormally dangerous, the following factors are to be considered:
(a) existence of a high degree of risk of some harm to the person, land or chattels of others;
(b) likelihood that the harm that results from it will be great;
(c) inability to eliminate the risk by the exercise of reasonable care;
(d) extent to which the activity is not a matter of common usage;
(e) inappropriateness of the activity to the place where it is carried on; and
(f) extent to which its value to the community is outweighed by its dangerous attributes.